**KING, Appellant,**

v.

**LINDSAY; Wullum Corporation, Appellee.**

[Cite as *King v. Lindsay* (1993), 87 Ohio App.3d 383.]

Court of Appeals of Ohio,
Franklin County.

Nos. 92AP–1577, 92AP–1791.

Decided April 27, 1993.

*David M. Buda,* for appellant.

*McGrath, Kaufman & Hatcher* and *Eric J. Wittenberg,* for appellee.

---

TYACK, Judge.

On November 24, 1990, Lori A. King and several of her friends went to Mean Mr. Mustards ("Mustards"), a bar just off The Ohio State University ("OSU") campus. It was the Saturday night of the OSU–Michigan football game, and the game had been played in Columbus. King was a regular customer of Mustards, as she went there often to dance and socialize with her friends. By King's recollection, she was dancing on the dance floor when a man, Paul David Lindsay, nudged her and asked her if she had a problem. She responded that she did not. Later, he nudged her again and asked her if she was a boy or a girl. She responded that it was none of his business. As King turned away, Lindsay grabbed her, punched her, threw her to the floor, and continued hitting her. King was approximately five feet, four inches tall and one hundred four pounds, while Lindsay was approximately five feet, eleven inches tall and one hundred seventy pounds. Lindsay had spent virtually the entire day drinking and socializing with friends.

King and some of her friends were able to get Lindsay off of her. King then moved a short distance away and got up on a large speaker platform to join her boyfriend. Lindsay followed her, pulled her off the platform by her shirt, and punched her in the face. King punched back, hitting him in the face. According to King, she then heard a crash and saw blood. During the entire encounter, Lindsay had had a long-neck beer bottle purchased at Mustards in his hand. King recalls never being on the floor during this second altercation. As a result

of being hit in the face with a beer bottle, King sustained serious cuts to her face and neck which left permanent scars.

After the beer bottle hit her face, King remembers someone screaming that she had been hit, and she recalls being separated from Lindsay. Only then did the disc jockey turn on the lights and call for the bouncers over the public address system. Additional pertinent facts are set forth below.

King filed suit against Lindsay and the owner and operator of Mustards, The Wullum Corporation, Inc. ("Wullum") on October 16, 1991; however, the suit against Lindsay was ultimately settled. Wullum filed a motion for summary judgment, which was granted by the trial court based on various affidavits and depositions. Thereafter, Wullum filed a motion for sanctions against King, and a hearing was held on the matter before a referee. The referee's report recommended that sanctions be imposed upon King's counsel, and King timely objected. However, the court agreed with the referee and awarded attorney fees in favor of Wullum (hereinafter "appellee") against King's counsel. King (hereinafter "appellant") has timely appealed, assigning seven errors for our consideration:

"[I.] The decision of the trial court granting summary judgment in this matter is contrary to law.

"[II.] The trial court improperly granted summary judgment when issues of material fact yet remain.

"[III.] The trial court improperly granted summary judgment by resolving issues of material fact.

"[IV.] Section 2323.51, Ohio Revised Code, in permitting sanctions to be imposed upon a party's counsel, is a legislative usurpation of the judicial power to discipline lawyers, and is thus violative of the Ohio Constitution.

"[V.] Section 2323.51, Ohio Revised Code, as applied by the trial court in this matter, permits a usurpation of the judicial power to discipline lawyers, and is thus violative of the Ohio Constitution.

"[VI.] Section 2323.51, Ohio Revised Code, as applied by the trial court in this matter, deprives the appellant and her counsel of the due process and equal protection of law guaranteed by the Constitutions of Ohio and of the United States.

"[VII.] The trial court abused its discretion in imposing sanctions upon appellant's counsel."

The first three assignments of error involve the issue of whether summary judgment was appropriate and will, therefore, be addressed together. Summary judgment is governed by Civ.R. 56(C), which states:

" * * * Summary judgment shall be rendered forthwith if the pleading[s], depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * * "

The essence of appellant's suit was that appellee was negligent in failing to provide adequate security. The Supreme Court of Ohio has held:

"The proprietor of a business establishment wherein alcoholic beverages are dispensed for consumption upon the premises owes a duty to members of the public while they are in his place of business to exercise reasonable care to protect them from physical injury as a result of violent acts of third persons." *Mason v. Roberts* (1973), 33 Ohio St.2d 29, 62 O.O.2d 346, 294 N.E.2d 884, paragraph two of the syllabus.

According to Bradley S. Miller, appellee's president, there are usually eight security personnel, or bouncers, on staff for a normal OSU football weekend. However, fifteen were on staff that night because of the OSU–Michigan game. Additionally, Miller asserted that because OSU students were on Thanksgiving break that weekend, the crowd was no heavier than for a normal football weekend. In an affidavit, he claimed that, in addition to the disc jockey watching the dance floor, one bouncer was stationed on the dance floor. However, John Jarrett, the only bouncer to submit an affidavit in this case, stated that he was the first security personnel to reach appellant after she was injured, yet he did not indicate that he was assigned to the dance floor area.

Appellant, however, stated that she saw seven bouncers that night and indicated that most of them were at the entrance as they usually were, checking IDs and collecting the cover charge. She also indicated that she knew for a fact that bouncers were not posted on the dance floor. Jennifer Mann, appellant's friend who accompanied her to the bar that evening and witnessed everything, also stated that there were no bouncers in the area of the dance floor. Appellant stated that the disc jockey, whose booth was above the dance floor, "watched everything" and would turn on the lights and call for the bouncers when anything got rough. She indicated that she had seen this happen on previous occasions at least once or twice before. Neither King nor her friend, Mann, had had anything to drink that day.

Appellee contends that our opinion in *Meyers v. Ramada Inn* (1984), 14 Ohio App.3d 311, 14 OBR 377, 471 N.E.2d 176, applies to this case and, as applied, relieves it from any liability. In *Meyers*, this court stated that when a plaintiff seeks to hold a premises owner liable for an intentional attack by a third person, "the burden is ordinarily upon plaintiff to establish that the [owner] knew, or should have known, about the assailant's dangerous propensity and/or the [owner] knew, or should have known, that the attack upon plaintiff was imminent." *Id.* at 313, 14 OBR at 378, 471 N.E.2d at 178.

Episodes of physical violence are readily foreseeable on the Saturday night of an OSU–Michigan football game at a busy campus bar. Indeed, the Columbus Police increased their presence on campus the night in question, and appellee claimed to have increased its number of bouncers by nearly twofold. Although appellee may not have known specifically of Lindsay's violent propensity, it was aware that acts of physical violence were likely to occur, as evidenced by its increase in security personnel. Indeed, construing the evidence most favorably to appellant, appellee knew that violence would likely occur *on the dance floor*, as there was testimony that prior to the night in question, the disc jockey had to turn the lights on and call the bouncers to the floor when violence had erupted. In *Meyers*, we stated that if special circumstances exist, such as previous assaults, ordinary care may require additional security measures to protect members of the public. *Id.* at 313, 14 OBR at 378, 471 N.E.2d at 178.

Yet, despite appellee's knowledge of previous violence and the likelihood that it would occur again, the evidence, construed most strongly in appellant's favor, shows that there were no bouncers near the dance floor. Thus, the only employee who would have been watching the dance floor was the disc jockey, and he claims not to have seen the first incident between appellant and Lindsay. Obviously, the disc jockey had other responsibilities which regularly diverted his attention from the dance floor. As a result, no person with security responsibilities was monitoring the dance floor, at least part of the time. This allowed the first assault to occur unnoticed by employees of the appellee. Conceivably, the second assault was also unobserved, if appellant's recollection is correct that the lights went on and efforts to obtain security personnel occurred only after the second assault was over and appellant was bleeding on the floor.

We believe that 2 Restatement of the Law 2d, Torts (1965) 135, Section 323, applies to this situation. It provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm, or

"(b) the harm is suffered because of the other's reliance upon the undertaking."

As stated above in the *Meyers* case, such reasonable or ordinary care may require increased security when special circumstances exist. Such circumstances did exist here. This was a busy campus bar on the night of the OSU–Michigan game. Alcoholic beverages were being served. Acts of violence on the dance floor had occurred in the past. Allowing bouncers to congregate near the entrance, requiring them to wade through the crowd in order to get to the dance floor, increased the risk of harm to those patrons on the dance floor. Appellee was therefore under a duty to protect patrons on the dance floor by placing a sufficient number of bouncers on or near the dance floor.

Again construing the evidence most favorably to appellant, Mustards had reason to be particularly wary of Lindsay. By Lindsay's own admission, he had begun drinking at a tailgate party in the morning, followed by several hours of drinking and socializing with friends at the Varsity Club. He then had played pool at the Bier Stube and shared in at least two pitchers of beer. He finally went to Mustards, where he continued drinking.

Construing the evidence most strongly in favor of appellant, appellee failed to exercise ordinary care as to security in general and as to Lindsay in particular. Summary judgment was therefore inappropriate and appellant's first three assignments of error are sustained. In reaching this result, we rely heavily upon the depositions of appellant and Lindsay. Because these depositions were filed as evidence less than two weeks before the trial court issued its ruling granting the summary judgment, the trial court very well may have been unaware of the depositions.

In light of the totality of the information before the trial court, the lawsuit against appellee was not frivolous. Therefore an award of attorney fees was inappropriate. Appellant's seventh assignment of error is sustained.

Because of our resolution of the seventh assignment of error, the fourth, fifth and sixth assignments of error are moot. See App.R. 12.

Having sustained appellant's first, second, third and seventh assignments of error, the judgment of the Franklin County Court of Common Pleas granting summary judgment and awarding attorney fees is hereby reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PETREE and CLOSE, JJ., concur.