COLLINS et al., Appellants,

v.

DOWN RIVER SPECIALTIES, INC., d.b.a. Numbers Nite Club, et al., Appellees.

[Cite as *Collins v. Down River Specialties, Inc.* (1998), 128 Ohio App.3d 365.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 70840 and 70842.

Decided April 20, 1998.

*Mansour, Gavin, Gerlack & Manos, Patrick M. McLaughlin* and *John F. McCaffrey; Jeffries, Kube, Forrest & Monteleone, David A. Forrest* and *William J. Shramek;* and *Christopher Roberson,* for appellants.

*Keller & Curtin Co., L.P.A.,* and *Stanley S. Keller; Todd M. Raskin; Steuer, Escovar & Berk* and *David Paul Bradley,* for appellees.

O'DONNELL, Presiding Judge.

Kenneth Wilkerson and Gertrude Collins separately appeal from directed verdicts entered in their respective cases, which had been consolidated for trial on their claims for negligence arising from an incident that occurred at Numbers Nite Club in which nineteen-year-old Vidal Brown shot Collins's son, Allen D. Howell, in the face at close range, killing him, and shot Kenneth Wilkerson in the abdomen, seriously injuring him.

The record reveals that on July 9, 1993, several gay men traveled from Youngstown, Ohio, and arrived in the late evening at 620 Frankfort Avenue in Cleveland, an establishment known as the Numbers Nite Club, which primarily caters to members of the gay and lesbian community. The evidence shows that during that evening, Kenneth Tyler had been dancing with Allen Howell and had rejected Vidal Brown's efforts to renew a past relationship. Although he knew Brown was angry and had been drinking, Tyler was not particularly concerned because Brown had visited his Youngstown home four days earlier as Tyler and Howell were leaving to visit Tyler's daughter and, although Brown had threatened at that time to shoot Howell in the head and told Tyler he'd go to prison for him, Tyler never thought he'd carry out those threats.

At Numbers, Brown pulled Tyler from the dance floor yelling, "I don't want you dancing with that bitch," showed him a chrome-plated .25 caliber semi-automatic Phoenix Arms pistol, and ordered Tyler to stay away from Howell. Tyler told Howell about the gun, but as the two were dancing, Brown approached Tyler, reached over his back and right shoulder, and shot Howell in the face, killing him. Tyler then began to struggle with Brown, who fired two additional shots, one of which struck Wilkerson in the lower left chest or abdomen. Brown then fled from the club, but police later apprehended him in the Tower City area.

Following Brown's indictment for aggravated murder and felonious assault and his plea to murder and subsequent sentence of eighteen years to life, Kenneth Wilkerson filed case No. 255911, alleging negligence against Down River Specialties, Inc., d.b.a. Numbers Nite Club, Michael Tritola and Michael Sidora as its officers, and Vidal Brown. On April 20, 1994, Gertrude Collins, individually and as Administrator of the Estate of Allen Howell, filed case No. 269204 against Down River Specialties, Inc. and Brown, alleging that the negligence of both parties caused Howell's death. These cases were then consolidated for trial.

The trial court litigated the separate negligence cases against Numbers Nite Club, and at the close of plaintiffs' case, the court directed a verdict for appellee Numbers Nite Club in both cases. Collins and Wilkerson separately appealed, and each raised a single assignment of error.

Collins's assignment of error states:

"The directed verdict must be reversed as plaintiffs–appellants demonstrated that Numbers was negligent in failing to provide for the safety and security of its patrons when it knew or should have known that there was a substantial risk of harm to Patrons Howell and Wilkerson while present on the premises."

Wilkerson's assignment of error states:

"The trial court erred in granting a directed verdict in favor of defendant when reasonable minds could conclude, based upon the evidence adduced at trial, that defendant knew or should have known of a substantial risk of harm to plaintiffs and that defendant was negligent in failing to provide proper security upon its premises."

In support of their contention that the trial court erred in directing verdicts, appellants urge that reasonable minds could conclude that Numbers Nite Club owed a duty to protect them from known danger and breached that duty and, further, that injury to patrons was reasonably foreseeable.

Numbers Nite Club contends that the trial court did not err in granting directed verdicts because Numbers had no notice or expectation of sudden or random acts of violence, that it owed no duty to protect its patrons from such acts in·this instance and that it could not have foreseen or prevented Brown's action on July 9, 1993.

The issue, then, presented for our review is whether the trial court erred in directing verdicts for the night club at the close of appellants' cases.

Civ.R. 50(A)(4) sets forth the standard for ruling on a motion for a directed verdict. It states:

"When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

Further, a motion for directed verdict does not present a factual issue to the court but, rather, a question of law, and it is the duty of the trial court to withhold an essential issue from the jury when there is not sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue. See *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, at paragraphs three and four of the syllabus.

In the instant case, appellants allege that Numbers owed a duty to protect patrons from known risks of harm and that it was foreseeable that patrons would be injured from violent acts of third parties within its premises.

In *Reitz v. May Co. Dept. Stores* (1990), 66 Ohio App.3d 188, 583 N.E.2d 1071, 1073–1074, our court stated:

"Thus, the duty to protect invitees from the criminal acts of third parties does not arise if the business 'does not, and could not in the exercise of ordinary care, know of a danger which causes injury to [its] business invitee. * * *' *Id.* [*Howard v. Rogers* (1969), 19 Ohio St.2d 42, 48 O.O.2d 52, 249 N.E.2d 804] at paragraph three of the syllabus.

"The existence of a duty therefore will depend upon the foreseeability of harm." (Citations omitted.)

In that case, in considering what evidence is relevant to establishing foreseeability, our court stated:

"We believe the 'totality of the circumstances' to be a better indicator to establish knowledge of a defendant than focusing in on any particular criminal occurrences." *Id.*, 66 Ohio App.3d at 193, 583 N.E.2d at 1075.

The court went on to state that "the totality of the circumstances must be somewhat overwhelming before a business will be held to be on notice of and therefore under the duty to protect against the criminal acts of others." *Id.*, 66 Ohio App.3d at 193–194, 583 N.E.2d at 1075.

In *Reitz*, where the patron was accosted and stabbed during the theft of her motor vehicle from the May's–on–the–Heights store, the reported opinion catalogs a proffer of evidence of thirty-seven car thefts, episodes of disturbances, fights, vandalism, drug transactions and juvenile disturbances, evidence of a nearly identical incident in 1982, expert testimony on the risk of personal injury with automobile thefts, that security should have been altered, that a substantial likelihood of injury to customers existed in the parking lot due to criminal activity, and that this May's store was the only one without outdoor security, among other proffers. With that state of the record, the trial court granted a directed verdict to May Company, which had argued it owed no duty because the assault was not foreseeable since no similar incident had occurred in the parking lot within a reasonable time period, it was not in a high crime area, and proximate cause could not be established.

In this case, no evidence established any similar incidents between 1986 and 1993, leading the trial court to its conclusion that Numbers Nite Club had no reason to expect the sudden violent criminal act of Brown. See, also, *Askew v. ABC Check Cashing, Inc.* (Oct. 3, 1996), Cuyahoga App. No. 69906, unreported, 1996 WL 563710; *Stone v. Shell Oil Co.* (May 9, 1996), Cuyahoga App. No. 68807, unreported, 1996 WL 239864; *Rescigno v. Heyduk* (Aug. 15, 1996), Cuyahoga App. No. 69172, unreported, 1996 WL 465374; and *White v. Euclid Square Mall* (1995), 107 Ohio App.3d 536, 669 N.E.2d 82.

Hence, in accordance with *Reitz v. May Co., supra*, and the other cases cited herein, we conclude that, based upon the totality of the circumstances, Numbers Nite Club did not have notice of the danger Brown posed to its patrons and could not have foreseen his actions and, hence, it had no duty to protect against Brown's criminal acts. Therefore, the court properly directed verdicts for appellee.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KARPINSKI, J., concurs.

SPELLACY, J., dissents.

KARPINSKI, Judge, concurring.

I concur in the main opinion, but write separately to address issues raised by the dissent. The trial court properly found that the murder and felonious assault committed by Vidal Brown with a firearm were not foreseeable by defendants. This lack of foreseeability negates both the existence of an underlying duty and the element of proximate cause necessary to establish a *prima facie* case of negligence.

This murder is significantly different from garden-variety cases involving barroom assaults, because the incident occurred among acquaintances who knew of the danger posed by Brown from his stalking and threats and his brandishing a concealed firearm before the incident. Wilkerson knew both Brown and Howell, but denied any knowledge of these prior circumstances. Defendants, however, did not create or enhance any risk to plaintiffs and are not insurers of their safety. Under the circumstances, the trial court properly found that defendants had no duty to protect or warn and were not liable for the murder and felonious assault.

Brown threatened Tyler, his former lover, in Youngstown before this incident. However, Tyler did not report the threat to police in Youngstown. On the evening of the incident, Tyler and Wilkerson each encountered and spoke with Brown in Cleveland at a different bar, Dominos. The two left, and again no one reported the encounter to the Cleveland police or Dominos' employees.

Brown then went to Numbers, where Tyler and Wilkerson had gone to meet up with other friends. Brown objected to Tyler dancing with others and "flashed" a small .25 caliber firearm. Tyler discussed this threat and handgun with others in his group, but no one reported the matter to the Cleveland police or bar employees. Numbers employed an off-duty police officer outside, and at least

five employees, including a doorman, three bar servants, and a restroom monitor inside the small 94–by 38–foot building. Carrying out his threats, Brown murdered Howell by shooting him in the face and in the process also shot Wilkerson in the abdomen. Plaintiffs dismissed their claims against Brown,[1] but seek to recover from defendants on the basis they did not take adequate precautions to prevent the crimes from occurring on their premises.

It is well established that the existence of a duty "is a question of law for the court to decide on a case-by-case basis." *Hickman v. Warehouse Systems, Inc.* (1993), 86 Ohio App.3d 271, 273, 620 N.E.2d 949, 950. Courts routinely hold, contrary to the dissent, that a premises owner has no duty to ensure the safety of those shot by estranged acquaintances on their premises. *E.g., Mauter v. Toledo Hosp., Inc.* (1989), 59 Ohio App.3d 90, 571 N.E.2d 470. Howell specifically knew that Brown brandished the pistol and was jealous about his dancing with Tyler, but did not report the matter or seek assistance from anyone prior to the shooting.

Even in cases which do not involve prior knowledge of the assailant, however, courts routinely decline to impose liability for criminal assaults based on "negligence" claims attributed to "crowded" or "understaffed" premises. The Franklin County case of *McKee v. Gilg* (1994), 96 Ohio App.3d 764, 645 N.E.2d 1320, is strikingly similar to the matter at bar. The plaintiff in *McKee* was criminally assaulted by another patron who became intoxicated during a minor league baseball game. The plaintiff and assailant exchanged words and engaged in a series of scuffles inside the stadium before the assailant assaulted him and was apprehended in the parking lot.

The court, noting there had been no prior similar incidents, concluded that no duty to prevent the criminal assault existed as a matter of law. The opinion explained as follows:

"We find it significant that, despite continued threats directed at appellants throughout the game, appellants failed to alert security personnel of any impending danger. By his own testimony, appellant indicated that he had the opportunity to report the problem but that he failed to do so because he thought he could handle it himself. Additionally, we note that the discussion between appellants and the assailants took place over a distance of two rows. Despite the short distance, appellants assert that loud arguing and cursing occurred, which should have alerted security to the danger. However, appellants have failed to present

---

1. Brown is currently serving a sentence of fifteen years to life for murder with three years' prior actual incarceration on the accompanying firearm specification pursuant to a plea bargain in CR–299097.

any specific evidence that a member of the security personnel heard or witnessed this behavior." *Id.* at 768, 645 N.E.2d at 1323.

The same facts are present here. Moreover, as in *McKee,* the security arrangements inside Numbers that evening were typical, and the plaintiffs were regular patrons, who presumably deemed existing security to be adequate.

The dissent contends the shooting herein was foreseeable because Numbers was located in a "high crime area." This argument is particularly misplaced here because it is based on crime statistics from two complete census tracts spanning a large segment of the entire Cleveland downtown area. I am more persuaded by the dissent's discounting similar information in a case involving a shooting spree against innocent bystanders at a library in the same downtown area. *Vrndavan v. Malcolm* (Mar. 17, 1994), Cuyahoga App. No. 64839, unreported, 1994 WL 86225. The shooting herein was no more foreseeable by defendants than the shooting in *Vrndavan.*

In fact, unlike *Vrndavan,* there were no prior homicides or stabbings at the crime scene since it opened in 1986. Moreover, there is no indication that defendants had any knowledge of the two-tract crime statistics. The record herein unambiguously shows that only a minuscule fraction of the crimes reported in the two census tracts were attributed to the bar.

The dissent's reliance on *King v. Lindsay* (1993), 87 Ohio App.3d 383, 622 N.E.2d 396, to support its argument is misplaced. The case has been routinely distinguished, even by the court which decided it, because of its unique and "special circumstances." *McKee v. Gilg, supra;* accord *Vrndavan v. Malcolm, supra.* *King* involved a brawl at a college campus bar following the annual Ohio State–Michigan Big Ten football game. The court specifically stated as follows:

"Episodes of physical violence are readily foreseeable on the Saturday night of an OSU–Michigan football game at a busy campus bar. Indeed, the Columbus Police increased their presence on campus the night in question, and appellee [the bar] claimed to have increased its number of bouncers by nearly two-fold." *Id.* at 387, 622 N.E.2d at 399.

Unlike the matter at bar, violence in *King* was in fact actually foreseen on this precise occasion because it followed a predictably rowdy big event and the issue was whether the precautions taken to meet the recognized threat were adequate.

The *King* court, moreover, also emphasized that the assailant, who "had spent virtually the entire day drinking," committed two separate assaults against the victim at the bar. *Id.* at 384, 622 N.E.2d at 397. After the first assault, and at the end of the second, he struck the victim with a long-neck glass beer bottle he purchased at the bar. Thus, unlike the matter *sub judice,* despite heightened security concerns, the bar actually provided an intoxicated patron with the

weapon used to assault the victim. The case at bar involves none of these aggravated "special circumstances" to create a duty to protect against criminal assaults.

Finally, the inability to prove foreseeability of the criminal assault necessary to establish a duty also leads some courts to find a similar failure to prove the element of proximate cause necessary to establish a *prima facie* case of negligence. Courts frequently invoke these related principles when courts decline to impose liability against bar owners for criminal assaults, *e.g.*, *Carr v. Nemer* (Dec. 16, 1992), Summit App. No. 15575, unreported, 1992 WL 380598, particularly when the assault involves a sudden and unexpected shooting with a firearm as here. *Popovich v. Pechkurow* (App. 1956), 76 Ohio Law Abs. 200, 145 N.E.2d 550; *Polando v. Vizzini* (1949), 58 Ohio Law Abs. 466, 97 N.E.2d 59.

Under the circumstances, the trial court properly entered judgment for defendants as a matter of law.[2]

SPELLACY, Judge, dissenting.

I respectfully dissent from the majority's conclusion affirming the trial court's order granting a directed verdict in favor of appellee Numbers Nite Club.

The lead opinion states that the trial court properly directed its verdict for appellee because the evidence presented did not establish that similar acts had occurred at Numbers Nite Club between 1986 and 1993. Thus, the majority concluded that Numbers Nite Club had no reason to expect the sudden violent criminal act of Vidal Brown.

In the present case, appellants contend that appellee was negligent in failing to provide adequate security. Actionable negligence requires the showing of a duty, the breach of that duty, and an injury proximately resulting therefrom. *Reitz v. May Co. Dept. Stores* (1990), 66 Ohio App.3d 188, 583 N.E.2d 1071, citing *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614, 616–617. Because of the special relationship between a business and its customer, a business "may be subject to liability for harm caused to such a business invitee by the conduct of third persons that endangers the safety of such invitee. * * *" *Reitz, supra*, at 191, 583 N.E.2d at 1074, citing *Howard v. Rogers* (1969), 19 Ohio St.2d 42, 48 O.O.2d 52, 249 N.E.2d 804, paragraph one of the syllabus. Thus, a business owner has a duty to warn or protect its business invitees from criminal acts of third parties when the business owner knows or should know that there is a

---

**2.** Regardless of any "foreseeability" issues, the record contains no basis to impose personal liability on defendants Michael Tritola and Michael Sidora as corporate officers or shareholders of the bar owner, Down River Specialties, Inc. See *Hammock v. Calo* (Oct. 30, 1995), Clermont App. No. CA 95–03–022, unreported, 1995 WL 631653.

substantial risk of harm to its invitees on the premises in the possession and control of the business owner. *Howard, supra.* Furthermore, the Ohio Supreme Court has held:

"The proprietor of a business establishment wherein alcoholic beverages are dispensed for consumption upon the premises owes a duty to members of the public while they are in his place of business to exercise reasonable care to protect them from physical injury as a result of violent acts of third persons." *Mason v. Roberts* (1973), 33 Ohio St.2d 29, 62 O.O.2d 346, 294 N.E.2d 884, paragraph two of the syllabus.

2 Restatement of the Law 2d, Torts (1965) 135, Section 323, further provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm, or

"(b) the harm is suffered because of the other's reliance upon the undertaking."

The existence of a duty will depend upon the foreseeability of harm. *Reitz, supra,* 66 Ohio App.3d at 191, 583 N.E.2d at 1073–1074. The foreseeability of criminal acts and whether a reasonably prudent business would have anticipated that an injury was likely to occur will depend upon the knowledge of the defendant-business. *Id.* at 192, 583 N.E.2d at 1074. Absent evidence that the business owner knew or should have known of the danger, a directed verdict in favor of the business owner would be proper. *Simpson v. Big Bear Stores Co.* (1995), 73 Ohio St.3d 130, 652 N.E.2d 702. In accordance with the holding of this court in *Reitz,* foreseeability must be viewed under the "totality of the circumstances," rather than focusing on any particular criminal occurrences.

The lead opinion relies solely on this court's holding in *Reitz, supra,* in determining that Numbers Nite Club had no reason to expect the sudden violent criminal act of Vidal Brown. I believe, however, that the facts in *Reitz* are distinguishable from the facts in the case *sub judice.* In *Reitz,* this court determined:

"None of the evidence excluded in this case, if permitted, would have been sufficient as a matter of law to give May Company reason to know that a stabbing or other assault in broad daylight was likely to occur and, therefore, to give rise to a duty of reasonable care to protect plaintiff. Car thefts were fairly infrequent, less than one per month, considering (1) the lot was unguarded, (2) the lot was large, and (3) the lot/store was open nearly three hundred sixty-five days a year and they did not involve personal injury. May Company was not located in

a high crime area, and * * * there was only one prior similar incident which occurred over three years before the crime * * *. We do not believe these circumstances were sufficient as a matter of law to establish the requisite foreseeability to create a duty in May Company to furnish outdoor security which may or may not have prevented injury." *Reitz, supra,* 66 Ohio App.3d at 194, 583 N.E.2d at 1075.

As stated in *Meyers v. Ramada Inn* (1984), 14 Ohio App.3d 311, 14 OBR 377, 471 N.E.2d 176, and followed by the court in *King v. Lindsay* (1993), 87 Ohio App.3d 383, 622 N.E.2d 396, reasonable or ordinary care may require increased security when special circumstances exist. In *Lindsay,* the Franklin County Court of Appeals did, in fact, find that "special circumstances" existed warranting increased security at a local bar on the Ohio State University campus. The *Lindsay* court specifically stated:

"As stated above in the *Meyers* case, such reasonable or ordinary care may require increased security when special circumstances exist. Such circumstances did exist here. This was a busy campus bar on the night of the OSU–Michigan game. Alcoholic beverages were being served. Acts of violence on the dance floor had occurred in the past. Allowing bouncers to congregate near the entrance, requiring them to wade through the crowd in order to get to the dance floor, increased the risk of harm to those patrons on the dance floor. Appellee was therefore under a duty to protect patrons on the dance floor by placing a sufficient number of bouncers on or near the dance floor."

As in *Lindsay,* and in contrast to the circumstances presented to this court in *Reitz,* I believe that such circumstances did exist in the present case.

Numbers Nite Club is an alcohol-serving establishment, which on Friday evenings offers live entertainment and becomes very crowded. Numbers Nite Club is patronized mostly by younger, often times underage, males. Prior to the incident in question, acts of violence had occurred both inside and outside the nightclub and, on several occasions, patrons of the nightclub have been arrested for their involvement in altercations or fights occurring inside the nightclub. In response to these incidents, Numbers Nite Club, unlike the department store in *Reitz,* maintained security in the outside parking lot, but failed to recognize the need for security in the nightclub itself. The evidence further reveals that, on occasion, where probable cause existed to believe that an individual may have a firearm or deadly weapon on his person, a pat-down search would be conducted before entrance into the nightclub would be permitted. One pat-down search revealed that an individual attempting to enter the nightclub was carrying a firearm. The firearm was seized and management was informed of the incident. Finally, Numbers Nite Club is located in an area that was considered to be a high crime area at the time the incident occurred.

Despite Numbers Nite Club's knowledge of prior acts of violence and the likelihood that some type of violence might occur again, Numbers Nite Club, on the night in question, failed to provide any security inside the nightclub. In the present case, the evidence shows that approximately two hundred to two hundred and fifty people were inside Numbers on the evening of the incident. Although a nonsecurity employee was assigned to monitor the bathrooms in the back of the nightclub, no security personnel were present inside the nightclub to monitor activities taking place at the bar or on the dance floor. Lack of security personnel allowed the first confrontation between Vidal Brown and Kenneth Tyler to go unnoticed. Only after Vidal Brown approached Allen Howell and shot him were efforts made to obtain security personnel working outside the nightclub. By this time, however, a second shot was fired, hitting and injuring appellant Kenneth Wilkerson.

The testimony of John Fransen, an expert in the field of safety and security techniques and practices, revealed that the security existing at Numbers Nite Club on July 9 and 10, 1993, was "totally inadequate." In order to formulate his opinion, Fransen took into consideration the general area where the nightclub is located; the demographics of the clientele, predominantly younger males; the nature of the business as being alcohol-related; and his review of testimony that Numbers Nite Club had a reputation for violence both inside and outside. Fransen further testified that based upon his professional experience and techniques and practices of safety and security, appellee "should have been able to foresee for a variety of reasons * * *, that there was a very strong likelihood that something of a violent nature could occur, up to and including a shooting."

Based upon the foregoing, I believe that Numbers Nite Club had a duty to protect its patrons by providing sufficient security throughout the bar. Thus, construing the evidence most strongly in favor of appellants, Numbers Nite Club failed to exercise ordinary care as to security in general, as well as to both Allen Howell and appellant Kenneth Wilkerson. Under the totality of the circumstances, I would reverse the trial court judgment for a directed verdict and remand the case for trial on its merits.