JOURNAL ENTRY AND OPINION.
{¶ 1} This cause came on to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1, the trial court records and briefs of counsel.
 {¶ 2} The appellants[1] appeal the grant of summary judgement by the trial court in favor of appellee, Spectrum of Supportive Services.
 {¶ 3} On June 3, 2000, Johnnie Johnson III ("Johnson") was brutally assaulted by Tyrone Woodard ("Woodard"). The attack occurred in the apartment of Tyrone Woodard, which was located in a building operated by Spectrum of Supportive Services ("Spectrum"). Woodard beat Johnson with a leg from an end table and used a knife to cut and stab Johnson. During the attack, Johnson's ear, lip, and nose were severed, he was stabbed in the arm and face, and one eye was removed. As a result of this attack, Johnson had his teeth replaced, had reconstructive surgery of his face, had to relearn to eat and swallow, and ambulates only with the help of a walker.
 {¶ 4} Spectrum operates a residential facility at the Mile Park Avenue Building. In order to receive services from Spectrum, clients must be diagnosed with a mental illness. Clients are referred to Spectrum from various mental health providers. The "Apartment Program" provides supportive housing and supportive mental health services. Spectrum teaches its residents life skills, such as cooking, cleaning, budgeting, employability, and transportation. Residents of the apartment building are responsible for taking their own medication and attending their own medical appointments. Spectrum staff members do not monitor whether the residents are taking their medication; however, they do inquire about it periodically and will report it to the resident's case manager.
 {¶ 5} Woodard and Johnson had each been diagnosed with schizophrenia. Both Woodard and Johnson lived in the apartment building operated by Spectrum; Woodard moved into the building on May 5, 1995, and Johnson moved in on October 6, 1995. Woodard received his mental health services from Northeast Ohio Health Services while Johnson received mental health services from the Veterans Administration.
 {¶ 6} Each resident of Spectrum has a key to his or her own locked apartment. Spectrum provides outside security in the form of a buzzer system used for granting access to the building. Spectrum does not control the visitation among residents of the building. Spectrum residents are permitted unrestricted and unsupervised visits to one another's apartments. Guests are permitted into the building but must leave by 11:00 p.m. Spectrum residents are free to come and go from the building and most are employed.
 {¶ 7} Woodard and Johnson were known to be friends at Spectrum and frequently would visit at the other's apartment. Both men periodically missed physician appointments, missed taking their medication, and destroyed property as a result of their hallucinations.
 {¶ 8} In the weeks prior to the attack, Woodard reported to both Spectrum and Northeast Ohio Health Services that he was taking his medication and keeping his medical appointments. On April 24, 2000, Woodard was seen by both his mental health case worker and his psychiatrist, Dr. Gretchen Gardner. Woodard denied having suicidal or homicidal ideation and reported his medication was "working."
 {¶ 9} On May 25, 2001, appellants filed their complaint for negligence and gross recklessness against appellee, Spectrum, tortfeasor Tyrone Woodard, and John Doe employees of Spectrum. On June 6, 2002, the appellants filed a related action for medical negligence and malpractice against Northeast Ohio Health Services and Dr. Gretchen Gardner. On June 19, 2002, the trial court granted appellants' motion to consolidate both cases for trial. On June 20, 2002, Spectrum filed a motion for summary judgment. On October 18, 2002, Spectrum's motion for summary judgment was granted by the trial court, which held, "[after] having construed the evidence most strongly in favor of the non-moving party, determines that reasonable minds can come to but one conclusion, that there are no genuine issues of material fact, and that Spectrum of Supportive Services is entitled to judgment as a matter of law."
 {¶ 10} On December 4, 2002, default judgment was entered against the tortfeasor, Tyrone Woodard[2], which was not binding on any other co-defendants in this action. On January 2, 2003, appellants filed a voluntary dismissal of all claims, without prejudice, against Northeast Ohio Health Services and Dr. Gardner. On January 6, 2003, appellants filed this appeal.
 {¶ 11} Appellants' sole assignment of error states,
 {¶ 12} "The trial court erred in granting defendant Spectrum of Support Services' motion for summary judgment."
 {¶ 13} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio App.2d 1; Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317.
 {¶ 14} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg
(1992), 65 Ohio St.3d 356.
 {¶ 15} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina, Ltd. of Texas (1991), 59 Ohio St.3d 108. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 16} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul
(1990), 71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741.
 {¶ 17} To defeat a motion for summary judgment filed by a defendant in a negligence action, the plaintiff must identify a duty, or duties, owed him by the defendant, and the evidence must be sufficient, considered most favorably to the plaintiff, to allow reasonable minds to infer that a specific duty was breached, that the breach of duty was the proximate cause of plaintiff's injury, and that plaintiff was injured. See Wellman v. East Ohio Gas Co. (1953), 160 Ohio St. 103.
 {¶ 18} As a general rule, landlords have no duty to protect their tenants from the criminal acts of third persons. Thomas v. Hart Realty,Inc. (1984), 17 Ohio App.3d 83; Sciascia v. Riverpark Apts. (1981),3 Ohio App.3d 164; Johnson v. Monroe Realty Co. (May 25, 1995), Cuyahoga App. No. 67964. The landlord has a duty to provide secure common areas in an apartment complex; however, the landlord is not the insurer of the premises against criminal activity. Carmichael v. Colonial SquareApartments (1987), 38 Ohio App.3d 31. Thus, the duty of a landlord is only to take reasonable precautions to provide reasonable security. Id. Liability attaches where the landlord should have reasonably foreseen the criminal activity and failed to take reasonable precautions to prevent such activity, and this failure was the proximate cause of the tenant's harm. Kelly v. Bear Creek Invest. Co. (Feb. 14, 1991), Cuyahoga App. No. 58011.
 {¶ 19} Foreseeability is based upon whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of the act. Menifee v. Ohio WeldingProducts, Inc. (1984), 15 Ohio St.3d 75; Eagle v. Mathews-Click-Bauman,Inc. (1995), 104 Ohio App.3d 792. The existence of a duty will depend on the foreseeability of the harm. Jeffers v. Olexo (1989), 43 Ohio St.3d 140.
 {¶ 20} A court must be mindful of two other factors when evaluating whether a duty is owed in cases such as this one. Jane Doe,et al. v. Beach House Dev. Co., et al. (2000), 136 Ohio App.3d 573
citing, Reitz v. May Co. Dept. Stores (1990), 66 Ohio App.3d 188. The first is that a business is not an absolute insurer of the safety of its customers. Id. The second is that criminal behavior of third persons is not predictable to any degree of certainty. Id. It would be unreasonable, therefore, to hold a party liable for acts that are, for the most part, unforeseeable. Id. Thus, the totality of the circumstances must be somewhat "overwhelming" before a business will be held to be on notice of and therefore under the duty to protect against the criminal acts of others. Id.
 {¶ 21} The "overwhelming evidence" standard requires more than knowledge of a potential future problem based on past occurrences. It requires (1) specific knowledge of a potential future problem based on past occurrences along with (2) a substantial likelihood that such an incident would occur. Walworth v. B.P. Oil Co. (1996),112 Ohio App.3d 340. Reitz v. May Co. Dept. Stores (1990),66 Ohio App.3d 188.
 {¶ 22} When liability is asserted against a landowner for the criminal acts of third parties, the burden is upon the plaintiff to establish that the owner knew or should have known about the assailant's dangerous propensities or knew the attack was imminent. King v. Lindsey
(1993), 87 Ohio App.3d 383, 387 citing, Meyers v. Ramada Inn (1984),14 Ohio App.3d 311.
 {¶ 23} However, if a "special relationship" exists between two parties, a duty may arise to protect one party from the harm caused by a third party. The Restatement of the Law of Torts 2nd (1965), Section 315 states, "there is no duty to control the conduct of third persons as to prevent them from causing physical harm to another unless (a) a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third persons's conduct, or (b) a special relationship exists between the actor and the other which gives to the other a right to protection." Gelbman v. National Bank of Warren
(1984), 9 Ohio St.3d 77, 79; see, also, Federal Steel Wire Corp.v. Ruhlin Construction Co. (1989), 45 Ohio St.3d 171.
 {¶ 24} Appellants correctly identify that Spectrum is a "residential facility" under Chapter 5119 of the Ohio Revised Code because the staff employed at Spectrum is permitted to remind residents to take and also assist them in taking their medication. Appellants claim that because Spectrum is a "residential facility," it is also a mental health provider, thus forming a "special relationship" between Spectrum and Johnson. Appellee claims that Spectrum is an apartment building, which creates only a duty of reasonable care toward Johnson. For the following reasons, we agree with the appellee.
 {¶ 25} According to the advertising brochure[3] put forth by the appellants, Spectrum is a non-profit, 501 corporation, certified by the Ohio Department of Mental Health ("ODMH"). Spectrum is classified as being an "other mental health services" provider by the ODMH. Spectrum provides various programs for the mentally ill including: "The Employment Alliance," which helps clients attain and retain jobs in the community; "The Housing Support Program," which helps clients to live on their own; "The Apartment Program," which provides housing to clients along with instruction on life skills; and finally, "The Fairweather Program," which provides employment for clients along with housing in a cooperative group. Woodard and Johnson were both enrolled in "The Apartment Program."
 {¶ 26} The "apartment program" requires each client to have a community support system of mental health professionals, which are not employed by Spectrum. Spectrum relies on these professionals to provide routine mental health care, treatment, and counseling. Spectrum does not diagnose or treat mental illness, prescribe or obtain medication for its clients, nor forcibly administer medication to its clients. Each year, each client's mental health professional must assess whether its client's needs are being fulfilled and recommend whether they should stay at Spectrum for the next year. According to the record, it is apparent that Spectrum only provides housing and instructs clients on daily living skills.
 {¶ 27} Spectrum provides some services similar to that of a mental health provider. Spectrum institutes individual performance plans for each client and reviews the client's performance every 90 days. These reviews may include the client's work history, whether clients have damaged their apartments, whether clients are keeping up with their personal hygiene, or how clients are feeling or acting towards others. The results are reported to each client's mental health professional. Spectrum also teaches its clients "life skills," such as cooking, cleaning, employability, etc. Additionally, Spectrum only accepts clients who have a mental illness.
 {¶ 28} In many ways, however, Spectrum is very similar to an apartment building. Clients are free to come and go from the building as they wish; clients are not required to return to the building each day and can spend the night at other locations; clients sign a month-to-month lease and can be evicted; clients are required to pay rent; clients are free to have guests so long as they leave by 11:00 p.m.; clients are free to visit other clients in their apartments; and clients have their own apartment, which includes a living area, full bathroom, and kitchen.
 {¶ 29} Spectrum's clients basically live independently with some guidance and training from Spectrum. Spectrum has no security staff, no staff member lives or stays at Spectrum overnight, and the case workers usually leave around 6:00 p.m. Even though Spectrum staff members can enter a client's apartment for "mental health issues" at anytime, clients live independently.
 {¶ 30} Given the above analysis, Spectrum is more analogous to an apartment building than a mental health provider. Therefore, the duty owed to Johnson is that of a landlord-tenant relationship.
 {¶ 31} Spectrum has taken reasonable precautions as a landlord to insure the safety of its tenants, fulfilling the duty owed to Johnson. A chain link fence surrounds the parking lot to secure vehicles parked there. Access to the building is controlled by a locked front door. Clients may enter with their keys, and guests need to be let in. In addition, there is a locked vestibule door between the front door and the hallways leading to the clients' apartments. Last, each client has a separate key to his or her own locked apartment. Absent evidence that tends to show foreseeability of the criminal act of Woodard, Spectrum has fulfilled the duty it owes to Johnson.
 {¶ 32} Appellants' reliance on Bundy, et al. v. Sky MeadowsTrailer Park, et al. (Oct. 23, 1989), Butler App. No. CA89-01-002, is misplaced because the instant matter is factually distinguishable. InBundy, the plaintiff was a five-year-old child who, while in his front yard, was bitten by a doberman pinscher owned by another resident of a trailer park. The trailer park was owned and operated by Sky Meadows. The plaintiff sued Sky Meadows and the dog's owners for negligence resulting in the dog bite. Facts were established to indicate that Sky Meadows had actual knowledge that the dog ran freely around the trailer park and had bitten other children in the past. Furthermore, Sky Meadows had a rule stating, "animals must not run at large," which was never enforced against the owners of this particular dog, despite its past attacks on children.
 {¶ 33} The Bundy court held that Sky Meadows had a duty to enforce the rules and regulations of the trailer park; hence, by contract, Sky Meadows had a duty to prevent animals from roaming the premises of the park. Further, the court stated a "special relation" exists due to the fact that Sky Meadows had knowledge of the dog's vicious propensities and promulgated rules prohibiting animals from running at large. Notice and knowledge of a dog's propensity to roam and attack children obligates the trailer park operator to take some affirmative action.
 {¶ 34} In the instant matter, Spectrum had rules requiring its clients to take their prescribed medication if the lack of taking such medication altered their behavior. However, nothing in the record indicates that the staff at Spectrum was on notice or had knowledge that Woodard was not taking his medication. Conversely, the record contains evidence that Woodard told his health care professionals he was in fact taking his medication and it was "working." The staff at Spectrum is not required to ensure each resident is taking their medication. The staff only reports to each client's mental health provider what is told to them by the client and what they notice about the client's behavior or apartment condition. The scope of duty owed by Spectrum to its clients is different than the duty owed in Bundy.
 {¶ 35} Appellants argue that Spectrum required its clients to take their medication or they would be expelled from the building; thus the fact that Woodard was not taking his medication would cause a special duty to arise between Johnson and Spectrum. However, appellants misconstrue the contract clause. The clause requires the clients to take their medication, only if not taking the medication would alter theirbehavior. Failure to take their medication may lead to a transfer to another facility. This contract language does not create a "special relationship" between Johnson and Spectrum.
 {¶ 36} Next, appellants argue that the previous behavior of Woodard would have created a special duty to protect Johnson because Spectrum had notice and/or knowledge of Woodard's dangerous propensities. We apply the totality of the circumstances test and do not find "overwhelming evidence" that would place Spectrum on notice of Woodard's violent propensities.
 {¶ 37} In November 1995, Woodard was written up for destroying property. He cut up his state identification card and bus pass, tipped over his refrigerator and kitchen table, and broke some of his roommate's belongings. At that time, Woodard believed his roommate was trying to harm him, and he stated that if females don't leave him alone, he will get a knife or a gun and take care of business. In January 1996, Woodard again was reprimanded for punching walls and kicking out his kitchen windows. He again stated on this occasion that people were trying to harm him. These are the only two instances in the record where Woodard demonstrated any type of violent behavior at Spectrum. It is undisputed that Woodard has destroyed property in the past, but has never physically harmed another person at Spectrum.
 {¶ 38} The attack on Johnson occurred on June 3, 2000, almost four years since Woodard's last reprimand for any type of violent behavior. Facts in the record indicate that among the mentally ill staying at Spectrum, it was not uncommon for clients to destroy property. It is undisputed that Johnson and Woodard were good friends. Given the facts in the record, it is apparent that Spectrum had no prior knowledge or notice of the attack on Johnson. The appellants' reliance on Hitch, Admr. v.Ohio Dept. of Mental Health (1995), 75 Ohio Misc.2d 15 is misguided and factually distinguishable from the instant matter. The appellants have failed to establish that a "special relationship" existed for Spectrum to protect Johnson or to control the actions of Woodard. In addition, Spectrum has fulfilled the duty it owed to Johnson as a tenant. Furthermore, appellants have failed to produce evidence which would tend to show that the criminal acts of Woodard were foreseeable given the facts of this case. While Spectrum owes a duty of reasonable care to its clients to assist in their care and well being, it was not an absolute insurer of a client's safety.
 {¶ 39} Therefore, we find that the grant of summary judgment by the trial court in favor of Spectrum was appropriate.
Judgment affirmed.
JAMES J. SWEENEY, JR., concurs.
DIANE KARPINSKI, J., concurs, with separate concurring opinion attached.
[1] "Appellants" include John Johnson Jr., who filed suit individually and as legal guardian of his son, Johnnie Johnson, III, and June E. Johnson, his wife.
[2] Tyrone Woodard was charged with various crimes in connection with the attack on Johnnie Johnson III; however, he was found to be unable to stand trial. Woodard remains involuntarily committed at the North Coast Behavioral Institute.
[3] Appellants' brief Exhibit 5.