McGRANE et al., Appellants,

v.

LIGHTHOUSE INN, Appellee.

[Cite as *McGrane v. Lighthouse Inn,* 173 Ohio App.3d 113, 2007-Ohio-4477.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–06–1392.

Decided Aug. 31, 2007.

George R. Royer, for appellants.

Robert A. Woodley, for appellee.

PIETRYKOWSKI, Presiding Judge.

{¶ 1} Plaintiffs-appellants, Nitja McGrane, John McGrane, Meghan McGrane, and Diane Bernath, appeal the August 17, 2006 judgment of the Lucas County Court of Common Pleas, which, following a trial to the court, found in favor of defendant-appellee, Lighthouse Inn. For the reasons that follow, we affirm the trial court's decision.

{¶ 2} The basic facts of this case are undisputed. On May 6, 2000, a wedding reception was held at the Lighthouse Inn in Toledo, Lucas County, Ohio. The groom's brother, Michael Cannon, was involved in an altercation with two guests, one of whom required medical treatment. The original case in this matter commenced in December 2000; appellants settled their claims against Cannon, and the case was dismissed without prejudice.

{¶ 3} On January 12, 2004, appellants commenced the instant action. Appellants alleged that the employees of appellee negligently served alcohol to an intoxicated person and/or failed to take steps to control Cannon's activities. The complaint further alleged that as to Diane Bernath, the mother of the bride, appellee breached its contract by failing to "maintain reasonable order" during the reception.

{¶ 4} A trial to the court was held on May 16, 2005, and April 26, 2006, and a summary of the relevant evidence is as follows. Kypros Diacou, the owner of the Lighthouse Inn, testified that no extra security is provided for private parties unless requested; security is provided for the restaurant and bar located downstairs from the banquet hall. Diacou stated that a police officer is stationed in the parking lot. Diacou testified that they do not serve alcohol to visibly intoxicated individuals.

{¶ 5} Diacou testified that he was not aware of the altercation until he heard arguing in the parking lot. Diacou sent the manager over to ascertain the problem; the manager was told that it was a family matter and none of his business. Diacou testified that in the 35 years he had been in the banquet and nightclub business, this was the only instance he recalls of an altercation during a wedding reception.

{¶ 6} Diane Bernath testified that she contracted with appellee for her daughter's wedding reception. Bernath testified that the wedding reception began around 6:30 p.m. and that the only Lighthouse Inn employees she saw the entire evening were the kitchen staff and two bartenders.

{¶ 7} Bernath testified that after the altercation, reception guests escorted Michael Cannon outside; no Lighthouse Inn employees assisted. Bernath stated that due to the incident, 90 percent of the guests were gone by 8:30 p.m. During cross-examination, Bernath acknowledged that with regard to the contract, she has no documents signed by either party.

{¶ 8} Next, Nitja McGrane testified that she is Bernath's sister. Nitja testified that during the wedding reception, she witnessed Cannon pinch her adult daughter Meghan McGrane's bottom. Nitja testified that she reprimanded Cannon and walked away. Nitja stated that she was dancing with her 18–month–old granddaughter in her arms when Cannon approached her on the dance floor. He began "harassing and antagonizing" Nitja by "sparring" or fake-punching her. A group of male guests grabbed Cannon and began to pull him off the dance floor. According to Nitja, Cannon broke free, lunged at her, and knocked her down. Nitja still had the child in her arms and fell on top of her. Nitja arched her back to protect the child.

{¶ 9} Nitja's husband, John McGrane, arrived to ascertain what had happened. Nitja testified that she observed Cannon turn around and punch John above his eye; John fell to the ground. John required emergency room treatment. Nitja testified that she did not see any security, police or otherwise, either inside or outside the hall. Nitja testified that she believed that Cannon was very intoxicated.

{¶ 10} John testified that he went to check on his wife after learning that she had been pushed down on the dance floor. John went up to Cannon and tapped him on the shoulder. Cannon swung around and struck John with his fist above John's left eye. Cannon was wearing a ring, which caused a laceration. John testified that he believed that Cannon was intoxicated; he saw Cannon at the bar several times but did not see him get any drinks. John testified that he did see Cannon several times with a drink in his hand. John further testified that he did not see any security, either in the hall or the parking lot.

{¶ 11} Michael Torres testified that he witnessed Cannon drinking alcohol during the course of the wedding reception. Torres testified that the bartender told Cannon that he had had enough to drink; after the statement, the bartender gave Cannon three shots of tequila. Torres admitted that he did not see Cannon consume any of the shots and that Cannon was with two other individuals.

{¶ 12} The bride, Krista Bernath, and her sisters, Robin Mathkour and Paige Bernath, all testified that during the reception, Cannon had a drink in each hand. They also observed Cannon being loud and obnoxious and inappropriately grabbing women. The sisters testified that they saw the bartender give Cannon shots of what they believed to be alcohol. During the course of the evening, they never complained to Lighthouse Inn staff about Cannon's behavior.

{¶ 13} A fourth Bernath sister, Julie King, also testified. King testified that she was in the coat room for most of the reception, waiting for her husband to pick up her two children, who had become ill. King testified that she saw Cannon go to the bar three or four times. King testified that Cannon was loud and obnoxious. King did not see any security until the police were called because some boys had been throwing rocks at the Lighthouse Inn.

{¶ 14} Toledo Police Officer Robert Britt testified that he was present, in the parking lot, at the Lighthouse Inn during the wedding reception. Officer Britt testified that he was stationed outside the doors of the reception hall. He stated that he generally stands between the doors to the hall and the bar so that the patrons are aware of his presence. Officer Britt approached four individuals, including John McGrane, and asked them whether there had been a fight and whether John needed medical attention. The individuals indicated that it was a family matter. Officer Britt then opened the door to the reception hall and asked a Lighthouse employee whether everything was all right. The employee informed him that there had been a fight but that now everything was fine.

{¶ 15} Kimberly Arnold testified that in 2000, she worked as a manager/bartender at the Lighthouse Inn. Arnold testified that she has refused to serve intoxicated individuals "hundreds" of times. Arnold testified that Lighthouse Inn employees were not permitted to serve intoxicated patrons. Arnold further stated that they never serve shots at wedding receptions. Arnold testified that Cannon did not appear to be intoxicated.

{¶ 16} Jason Adkins, general manager of the Lighthouse Inn, testified next. Adkins stated that he was present during the entire wedding reception. He stated that he would walk through the reception every 30 to 45 minutes. Adkins was at the bar downstairs when he heard that there were some people arguing in the parking lot. Adkins testified that he approached the group, identified himself, and asked whether there was anything he could do to help. According to Adkins, they told him to "mind [his] own business," and after speaking with the police officer, he went back downstairs.

{¶ 17} Adkins testified that it is the Lighthouse Inn's policy never to serve intoxicated patrons. Adkins stated that they do not serve alcohol in shot glasses. Further, Adkins testified that in his five years of managing the Lighthouse Inn

and during approximately 100 wedding receptions held there, he had never witnessed a problem other than the one at issue.

{¶ 18} On August 17, 2006, the trial court entered judgment in favor of appellee. Specifically, the court found that appellee had provided reasonable security as provided for under the contract, that there was insufficient credible evidence that appellee's agents had served alcohol to an intoxicated person, that there was no medical testimony to support claims for personal injury, and that any personal-injury claims not filed within two years of the May 6, 2000 incident were barred by the statute of limitations. Appellants timely filed a notice of appeal.

{¶ 19} Appellants now set forth the following two assignments of error:

{¶ 20} "Assignment of Error Number One

{¶ 21} "The court erred in overruling appellants' motion to set aside default judgment dismissing appellants' complaint.

{¶ 22} "Assignment of Error Number Two

{¶ 23} "The trial court erred in denying appellant's claims by reason of the expiration of the statute of limitations under personal injury."

{¶ 24} In appellants' first assignment of error, they contend that the trial court erroneously entered judgment in favor of appellee. The standard of review provides that in general civil cases, where the plaintiff's burden of proof at trial is by a preponderance of the evidence, a court of appeals will not reverse a trial court judgment if the judgment is supported by some competent, credible evidence going to all the essential elements of the case. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273, and *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

{¶ 25} Appellants first argue that the trial court erroneously failed to find that appellee was liable under the business-owner-and-invitee-negligence theory. It is well settled that "[a] business owner has a duty to warn or protect its business invitees from criminal acts of third parties when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner." *Simpson v. Big Bear Stores Co.* (1995), 73 Ohio St.3d 130, 652 N.E.2d 702, syllabus.

{¶ 26} Regarding the liability of nightclub owners for the acts of its patrons, this court has stated that "a commercial provider of alcohol owes a duty to its invitees to exercise reasonable care to protect them from injury caused by the intentional violent acts of other patrons who were served alcohol." *Cox v. Phillips* (Mar. 31, 1992), 6th Dist. No. L–91–085, 1992 WL 66558, citing *Haumes-*

*ser v. Lachowicz* (June 29, 1990), 6th Dist. No. L–89–270. The requirement that the violent acts were foreseeable applies equally with regard to patrons who were served alcohol. Id. See, also, *Duncan v. B & B, Inc.,* 6th Dist. No. L–02–1131, 2002-Ohio-7302, 2002 WL 31888169.

{¶ 27} In support of their argument that appellee breached its duty, appellants cite *King v. Lindsay* (1993), 87 Ohio App.3d 383, 622 N.E.2d 396. In *King,* the appellant, a female patron at a college bar in Columbus, Ohio, was attacked by an intoxicated male patron on the evening of the OSU–Michigan football game. The bar's president stated that on a normal weekend, there are eight security personnel at the bar but that due to the football game, 15 security staff were present that night. Id. at 386, 622 N.E.2d 396.

{¶ 28} The appellant stated that she saw seven bouncers at the front door checking identification and that was where they usually were. She also stated that there were no bouncers posted on the dance floor where she was attacked. Id. The appellant stated that on prior occasions, the disc jockey would turn up the lights and call for a bouncer when things got "rough." Id. Further, by his own admission, the intoxicated patron had been drinking since the morning at a tailgate party and then at several establishments. Id. at 388, 622 N.E.2d 396. Reversing summary judgment in favor of the nightclub, the court held that the bar owner had knowledge of prior incidents and of the likelihood of physical violence at a campus bar the night following an OSU–Michigan football game. Id.

{¶ 29} The facts of the instant case differ greatly from those in *King.* First, there was no evidence presented of any past incidents of violence. Both the Lighthouse Inn owner, Kypros Diacou, and the manager, Jason Adkins, testified that they could recall no prior incidents of violence occurring at the banquet hall. Next, the wedding reception was a private party, not a loud, crowded college bar on a Saturday night following the biggest football game of the season. Further, unlike in *King,* we have no direct admission regarding Cannon's intoxicated status. Finally, despite Cannon's alleged inappropriate actions during the course of the evening, no one put the Lighthouse Inn staff on notice of his behavior. Accordingly, appellee owed no duty to appellants.

{¶ 30} Appellants also argue that appellee breached its contract to provide reasonable security. First, appellee contracted with Bernath only. Further, as the trial court opined, even if appellants could claim third-party beneficiary status, there was no evidence presented that the security provided was inadequate. As set forth above, appellants failed to demonstrate that appellee's agents had any prior knowledge of physical violence occurring at a wedding reception.

{¶ 31} Finally, appellants dispute the trial court's finding that expert testimony was required with regard to the personal-injury claims. While we do not

disagree that a simple laceration may well be within the ken of the trial judge, the trial court's finding has no effect on this case because appellants failed to establish a duty owed to them. Accordingly, appellants' first assignment of error is not well taken.

{¶ 32} In appellants' second assignment of error, they dispute the trial court's statement that "any personal injury claims for negligence or intentional actions not filed within two years of May 6, 2000 are barred." Based on the statement, appellants, in their appellate brief, question "[w]hether the court ruled on the claims of Plaintiff Diane Bernath." The court clearly ruled on her contract claim. Regarding any tort theories, it is evident that competent, credible evidence supported the trial court's finding that appellee did not breach its duty to provide "reasonable security." Accordingly, whether or not the court specifically included Bernath's tort claims when it reached its decision is immaterial. Appellants' second assignment of error is not well taken.

{¶ 33} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment affirmed.

Skow and Osowik, JJ., concur.