HICKMAN, Appellant,

v.

WAREHOUSE BEER SYSTEMS, INC., Appellee, et al.

[Cite as *Hickman v. Warehouse Beer Sys., Inc.* (1993), 86 Ohio App.3d 271.]

Court of Appeals of Ohio,
for Montgomery County.

No. 13503.

Decided Feb. 10, 1993.

*Robert L. Mues,* for appellant.

*Stephen V. Freeze* and *Thomas B. Bruns,* for appellee Warehouse Beer Systems, Inc.

WOLFF, Judge.

Robyn H. Hickman, personal representative of Stephanie Lynn Hiatt, appeals from a summary judgment against her and in favor of Warehouse Beer Systems, Inc. ("Warehouse Beer"). Her assignment of error is as follows:

"The trial court prejudicially erred and abused its discretion in determining that reasonable minds could not conclude that appellee Warehouse Beer Systems, Inc. owed a duty to Stephanie Hiatt."

This litigation arose out of the death of Stephanie Lynn Hiatt. Hiatt was shot to death in the course of an armed robbery perpetrated by Eddie Robertson at a Warehouse Beer drive-thru located at 5505 N. Main Street in Harrison Township, Montgomery County. On September 4, 1988, at approximately 10:20 p.m., Hiatt was at the drive-thru to visit with the on-duty clerk, Timothy G. Boyd. Not long after Hiatt's arrival, Robertson entered the premises, and after feigning an interest in making a purchase, drew a firearm and ordered both Hiatt and Boyd to lie down in the walk-in cooler. Hiatt and Boyd fully cooperated with Robertson's demands. Nevertheless, Robertson shot both of them and fatally injured Hiatt.

Suit was brought against Warehouse Beer and Eddie Robertson. Eventually, Warehouse Beer moved for summary judgment which was granted in its favor. The parties appear to agree that the single issue on appeal is whether the unprovoked intentional murder of Hiatt by Robertson was foreseeable, such that Warehouse Beer had a duty to prevent it.

Warehouse Beer's answers to interrogatories revealed that burglaries had occurred on the premises January 23, 1987 and February 8, 1987, that vandalism had occurred May 20, 1987, and that a petty larceny had occurred July 8, 1987.

Warehouse Beer's motion for summary judgment was supported, *inter alia*, by the affidavit of its current general manager, William S. Allen, who stated in pertinent part, as follows:

"3. Warehouse Beer currently owns and operates the beer and beverage drive-thru located at 5505 North Main Street, Dayton, Ohio 45415. Warehouse Beer opened this particular drive-thru in 1976.

"4. Between 1976 and September 4, 1988, there had never been an armed robbery at the drive-thru.

"5. Between 1976 and September 4, 1988, there had never been any incidents involving guns or firearms at this drive-thru, nor had anyone ever been shot there.

"6. Between 1976 and September 4, 1988, no employee, customer, or any other person had ever been killed at this drive-thru.

"7. Between 1976 and September 4, 1988, no employee, customer, or any other person had ever been injured at this drive-thru due to the actions or activities of any criminal."

Allen's affidavit was not refuted by the evidentiary materials submitted by Hickman in response to the motion for summary judgment.

In response to the motion for summary judgment, Hickman provided the affidavit of a "security expert and analyst," Joseph Wolpin, who stated, *inter alia,* that beer drive-thrus present a high risk of robbery, that Warehouse Beer's "security * * * was grossly inadequate due to the nature of the business conducted on the premises," and that in his opinion "an owner of a retail operation such as this should have reasonably foreseen the likelihood of an armed robbery occurring." Boyd's affidavit, also submitted in opposition to the motion for summary judgment, stated that he was concerned about his personal safety while working at the drive-thru in question, that the "other store had been robbed four-five times previous" to the incident September 4, 1988, that in addition to those incidents of criminal activity, there had been a "few times where a neighborhood kid would run through and steal something," and that he "thought it was a high crime area but [he] had no real contact with the other businesses." The affidavit of Kathleen Bierlein, a paralegal to Hickman's counsel, stated that neighboring businesses had more extensive "security precautions" than Warehouse Beer. (Given our disposition of this appeal, we need not consider arguments made by Warehouse Beer in the trial court that certain aspects of the above affidavits were inadmissible.)

In *Reitz v. May Co. Dept. Stores* (1990), 66 Ohio App.3d 188, 583 N.E.2d 1071, the business owner's responsibility to its business invitees was discussed as follows:

"Actionable negligence requires the showing of a duty, the breach of that duty and an injury proximately resulting therefrom. *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614, 616. Because of the special relationship between a business and its customer, a business 'may be subject to liability for harm caused to such a business invitee by the conduct of third persons that endangers the safety of such invitee. * * * *' *Howard v. Rogers* (1969), 19 Ohio St.2d 42, 48 O.O.2d 52 [56], 249 N.E.2d 804 [807], paragraph one of the syllabus. However, a business is not an insurer of the safety of its patrons while they are on its premises. *Id.* at paragraph two of the syllabus. Thus, the duty to protect invitees from the criminal acts of third parties does not arise if the business 'does not, and could not in the exercise of ordinary care, know of a danger which causes injury to [its] business invitee. * * * *' *Id.* at paragraph three of the syllabus.

"The existence of a duty therefore will depend upon the foreseeability of harm. *Jeffers, supra,* 43 Ohio St.3d at 142–143, 539 N.E.2d at 617; *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707. *Whether such a duty exists is a question of law for the court to decide on a case-by-case basis.* Prosser & Keeton, The Law of Torts (5 Ed.1984), Section 37; see

*Menifee, supra; Taylor v. Dixon* (1982), 8 Ohio App.3d 161, 8 OBR 219, 456 N.E.2d 558." (Emphasis added.) *Reitz, supra,* 66 Ohio App.3d at 191–192, 583 N.E.2d at 1071.

In discussing whether the foreseeability of harm was such as to create a duty, the court in *Reitz* recognized that some courts had focused solely on prior *similar* acts when discussing foreseeability whereas others had considered "more of the total picture or criminal activity in general." *Id.* at 192, 583 N.E.2d at 1071.

*Taylor v. Dixon, supra,* is a case wherein the court focused on prior similar acts. In that case, the plaintiff, Gerald F. Taylor, was shot when he walked into a Lawson's convenience store on Parsons Avenue in Columbus, Ohio while a robbery was in progress. Taylor and his wife sued Lawson Milk Company, Inc., and the robber, Dixon. Summary judgment was granted in favor of Lawson. The question in *Taylor,* as in this case, was whether Lawson owed a duty to Taylor. The Court of Appeals for Franklin County discussed this issue as follows:

"In the case at bar, plaintiffs argue that since defendant's Parsons Avenue store had been robbed seven times in four years, defendant should have known that the store was reasonably likely to be robbed again, and that defendant should have taken such precautionary measures as providing an unobstructed view of the inside of the store through the front windows, constructing electronic devices such as horns, neon lights or other noise makers to advise potential patrons to stay away from the premises when a robbery was in progress and other preventive measures.

"Defendant argues that, even if it could have anticipated an eighth robbery, since no one was injured in the previous robberies, it had no reason to foresee that the eighth robber might shoot a customer without provocation. Defendant relies upon *Howard* [*v. Rogers* (1969), 19 Ohio St.2d 42, 48 O.O.2d 52, 249 N.E.2d 804] and *Townsley* [*v. Cincinnati Gardens, Inc.* (1974), 39 Ohio App.2d 5, 68 O.O.2d 72, 314 N.E.2d 409] to support its argument that it has no duty to protect business invitees such as plaintiff from the unforeseeable danger of being shot by a robber upon walking into defendant's store.

"Defendant's argument is further supported by the cases of *Emm v. Sheskey* (Feb. 14, 1980), Franklin App. No. 79AP–632, unreported, and *Ross v. Nutt* (1964), 177 Ohio St. 113 [29 O.O.2d 313, 203 N.E.2d 118]. Although these two cases were concerned more with the element of proximate cause, in neither case was a duty imposed upon the defendant which would have required the defendant to exercise the power of double foreseeability. The present case also presents a question of double foreseeability since, in order to hold defendant liable under the facts of this case, a trier of facts would be required to find that defendant was required to foresee not only that its store might again be robbed, but also that

the robber might shoot third persons without provocation. Although defendant has a duty to protect its business invitees from known or anticipated dangers, we agree with the trial court that defendant has no duty to warn potential customers that a robbery is in progress, because defendant did not know, and did not have reason to believe, that a robber whose demands were being complied with would suddenly decide to shoot a customer.

"  *  *  *

"Under the facts of this case, we conclude that defendant had no duty to warn of dangers which it could not reasonably foresee."

Comparing the facts in this case with the facts in *Taylor*, it is clear that, applying the *Taylor* focus on prior similar acts, Warehouse Beer had no duty to Hiatt. Unlike the Lawson's store in *Taylor*, which had been robbed seven times in four years, there had never been a robbery at the Warehouse Beer drive-through in question. Eddie Robertson's shooting of the completely cooperative Hiatt during the course of an armed robbery was not, under *Taylor*, sufficiently foreseeable to impose a duty upon Warehouse Beer to prevent the incident.

*Reitz, supra*, a case decided by the Court of Appeals for Cuyahoga County, adopted a "totality of the circumstances" approach to the question of foreseeability rather than the focus on prior similar acts utilized in *Taylor*. In *Reitz*, Mrs. Reitz had been accosted and stabbed during the theft of her automobile in the May Company parking lot on the afternoon of June 18, 1985. Mrs. Reitz and her husband eventually filed suit, and the trial court directed a verdict in favor of the May Company following her opening statement. On appeal, Mrs. Reitz challenged the directed verdict and several of the trial court's pretrial evidentiary rulings. Mrs. Reitz had proffered what her excluded evidence would have consisted of:

"The proffer included evidence of a history of criminal activity in May Company's parking area, including thirty-seven car thefts, episodes of disturbances, fights, vandalism, drug transactions, and juvenile disturbances, since 1982, evidence of a nearly identical incident occurring April 12, 1982, expert testimony on the risk of personal injury with automobile thefts, expert testimony that security should have been altered, expert testimony of a substantial likelihood of injury to customers based upon the criminal activity in the parking area, evidence that May's-on-the-Heights was the only May Company store without outdoor security, evidence that May Company insists in mall lease agreements that security be provided, May Company's manual required safe common areas for employees and customers and the gathering and evaluating of criminal conduct or complaints, evidence of May Company's specific directive to keep accurate records for the purpose of evaluating security needs, and that May Company's expert acknowledged that juvenile activities should be considered

when determining the safety of a parking lot and whether security should be enhanced." *Reitz, supra,* 66 Ohio App.3d at 190–191, 583 N.E.2d at 1073.

In addition to the above-quoted language from *Reitz,* the court of appeals in *Reitz,* in affirming the action of the trial court in directing a verdict, stated as follows:

"Thus, to hold the defendant liable here would be to hold that it was foreseeable a violent attack would take place in broad daylight in the parking lot.

"The foreseeability of criminal acts, whether a reasonably prudent business would have anticipated that an injury was likely to occur, will depend upon the knowledge of the defendant-business. See *Howard, supra; Montgomery v. Young Men's Christian Assn.* (1987), 40 Ohio App.3d 56, 531 N.E.2d 731; *Taylor, supra; Townsley v. Cincinnati Gardens, Inc.* (1974), 39 Ohio App.2d 5, 68 O.O.2d 72, 314 N.E.2d 409. Appellants argue that the totality of the circumstances should be considered when determining a defendant's knowledge. This would include the evidence of prior nonviolent crimes the trial court excluded. Appellee argues that evidence of defendant's knowledge should be limited to prior similar incidents, *i.e.,* other violent crimes against the person.

"Ohio has no definitive authority directly addressing this issue. In *Howard, supra,* where plaintiff was injured in a fight between others at a teenage dance, the Supreme Court of Ohio affirmed judgment for defendant and noted there was 'no evidence either of any such conduct at any teen-age dance in or near where this dance was conducted, or of anything which might have put defendants on notice as to the possibility of such a fight.' (Emphasis added.) *Id.,* 19 Ohio St.2d at 48, 48 O.O.2d at 56, 249 N.E.2d at 807. Although this language would appear to permit the broad admission of evidence to establish a defendant's knowledge, various interpretations have flowed from this language, including courts' focusing solely on prior similar acts when discussing foreseeability. See, *e.g., Montgomery v. Young Men's Christian Assn., supra; Taylor v. Dixon, supra; Townsley v. Cincinnati Gardens, Inc., supra.* Other courts, however, have referenced more of the total picture or criminal activity in general. See, *e.g., Meyers v. Ramada Inn* (1984), 14 Ohio App.3d 311, 14 OBR 377, 471 N.E.2d 176 (special circumstances, such as previous assaults, high crime area); *Daily v. K–Mart Corp.* (1981), 9 Ohio Misc.2d 1, 9 OBR 105, 458 N.E.2d 471 (occurrence of prior criminal incidents). We are now squarely faced with the issue of what evidence is relevant to establishing foreseeability for the purpose of determining whether a business owes a duty toward its patrons for the criminal acts of third parties.

"Relevant evidence is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Evid.R. 401. Under this broad test, evidence of other criminal activity at or near the location of the

business would certainly be probative of whether additional criminal activity might occur. We believe the 'totality of the circumstances' to be a better indicator to establish knowledge of a defendant than focusing in on any particular criminal occurrences. Accord *Morgan v. Bucks Assoc.* (E.D.Pa.1977), 428 F.Supp. 546; *Isaacs v. Huntington Memorial Hosp.* (1985), 38 Cal.3d 112, 211 Cal.Rptr. 356, 695 P.2d 653; *Garner v. McGinty* (Tex.Ct.App.1989), 771 S.W.2d 242; see, generally, Annotation, Parking Facility Proprietor's Liability for Criminal Attack on Patron (1986), 49 A.L.R.4th 1257; Annotation, Liability of Owner or Operator of Shopping Center, or Business Housed Therein, for Injury to Patron on Premises from Criminal Attack by Third Party (1979), 93 A.L.R.3d 999.

"Comment *f* to Section 344 of the Restatement of the Law 2d, Torts (1965), relied upon in part by the Supreme Court of Ohio in *Howard,* provides:

" 'Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.'

"By adopting the 'totality of the circumstances' standard, *the first victim is not necessarily precluded from establishing foreseeability and the finite distinctions between how similar prior incidents must be is avoided.*

"In addition to the totality of the circumstances presented, a court must be mindful of two other factors when evaluating whether a duty is owed in cases such as this one. The first is that a business is not an absolute insurer of the safety of its customers. The second is that criminal behavior of third persons is not predictable to any particular degree of certainty. It would be unreasonable, therefore, to hold a party liable for acts that are for the most part unforeseeable. Thus, *the totality of the circumstances must be somewhat overwhelming before a business will be held to be on notice of and therefore under the duty to protect against the criminal acts of others.*

"None of the evidence excluded in this case, if permitted, would have been sufficient as a matter of law to give May Company reason to know that a stabbing or other assault in broad daylight was likely to occur and, therefore, to give rise to a duty of reasonable care to protect plaintiff. Car thefts were fairly infrequent, less than one per month, considering (1) the lot was unguarded, (2) the lot

was large, and (3) the lot/store was open nearly three hundred sixty-five days a year and they did not involve personal injury. May Company was not located in a high crime area, and although there were some juvenile disturbances and other nonviolent incidents, there was only one prior similar incident which occurred over three years before the crime to Mrs. Reitz. We do not believe these circumstances were sufficient as a matter of law to establish the requisite foreseeability to create a duty in May Company to furnish outdoor security which may or may not have prevented injury." (Emphasis added.) *Reitz, supra*, 66 Ohio App.3d at 192–194, 583 N.E.2d at 1074–1075.

Even under the "totality of the circumstances" approach of the Court of Appeals for Cuyahoga County, Hickman's case against Warehouse Beer fails. Although *Reitz* purports to focus on the totality of the circumstances, the focus in *Reitz* was nevertheless on the particular May Company parking lot in question.

The unrefuted evidence in this case was that prior to the date in question, no armed robbery or other crime involving personal violence had been committed at the premises in question, nor had there been any incidents involving guns or firearms. There had been two burglaries, one vandalism incident, and infrequent petty thefts. Although Boyd thought that the location was in a high crime area, it is clear from his affidavit that he had no factual basis for his opinion. Although Wolpin expressed an opinion that Warehouse Beer should have anticipated an armed robbery, even Wolpin did not opine that Warehouse Beer should have anticipated that an armed robber would shoot a cooperative robbery victim without provocation. Notwithstanding the undeniable tragedy of this unprovoked murder, the totality of the circumstances were not "somewhat overwhelming" and, even under the totality of the circumstances approach, Warehouse Beer was entitled to summary judgment.

In this case, it is unnecessary for us to determine whether the focus on prior similar acts approach utilized in *Taylor, supra*, or the totality of the circumstances approach utilized in *Reitz, supra*, is the preferable approach. Under either, Warehouse Beer was entitled to summary judgment.

The assignment of error will be overruled, and the judgment will be affirmed.

*Judgment affirmed.*

FAIN, J., concurs.

GRADY, P.J., concurs.

GRADY, Presiding Judge, concurring.

I agree with the outcome reached by Judge Wolff, but would limit our analysis to that employed in *Taylor v. Dixon* (1982), 8 Ohio App.3d 161, 8 OBR 219, 456

N.E.2d 558. Under that rule, the necessary double foreseeability is difficult to establish, but not impossible. The approach in *Reitz v. May Co. Dept. Stores* (1990), 66 Ohio App.3d 1988, 583 N.E.2d 1071, a "totality of the circumstances" that must be "somewhat overwhelming," is vague as well as difficult to apply in a summary judgment proceeding, in which evidence may not be weighed. Under a *Taylor v. Dixon* analysis, the injuries here were not foreseeable from the evidence presented, which permits no reasonable inference that a shooting was likely to occur.