JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Myron Sabat, appeals the trial court's granting of summary judgment in favor of defendants-appellees, Garfield Mall Associates, et al. Finding no merit to the appeal, we affirm.
 {¶ 2} On a Wednesday afternoon in February 2003, Bernice Sabat ("Bernice") and her husband, Myron, went to the Giant Eagle supermarket at Garfield Mall in Garfield Heights. Myron Sabat ("Sabat") waited in the car while his wife went into the store. He heard his wife return and open the trunk. As he prepared to exit the car to assist her, a woman tapped on the window. The woman, Catherine Mollica ("Mollica"), told him that his wife was lying on the ground. Mollica found Bernice lying on the ground away from the Sabat vehicle. Her glasses were ten feet away from her and her purse was missing. Bernice was bleeding from her head and could not remember what had happened. Both Mollica and Sabat commented that Bernice appeared "roughed up."
 {¶ 3} Garfield Heights police responded to the scene. The responding officer reported that Bernice told him that she had become dizzy and blacked out. He concluded that she had fallen and that there was no evidence of foul play. Bernice was taken to the hospital. Her purse was later recovered miles away, and the straps on one end of the purse had been broken. Bernice died sixteen months after the incident.
 {¶ 4} Sabat filed suit against Garfield Mall, its management company, Associated Estates Management, and its owners (collectively "AEM") on behalf of himself and his wife's estate. The complaint alleged personal injury, wrongful death, and loss of consortium.
 {¶ 5} In August 2005, AEM filed a motion for summary judgment, and Sabat filed a motion to compel discovery of security audits purportedly performed by AEM's security consultant, Craig Michalski. The trial court granted the motion to compel. Sabat, still not satisfied with the discovery, moved for leave to file an amended complaint to include a claim for destruction of evidence and punitive damages.
 {¶ 6} In October 2005, the trial court granted AEM's motion for summary judgment. The trial court also denied, as moot, Sabat's motion for leave to file the amended complaint. Sabat had also filed an affidavit pursuant to Civ.R. 56(F), requesting a continuance because he had not received discovery. The trial court did not rule on that motion.
 {¶ 7} Sabat separately appealed the granting of summary judgment and the denial of his motion to file an amended complaint. The appeals were consolidated, but Sabat subsequently dismissed the appeal regarding the denial of leave to file an amended complaint. This appeal remains, in which Sabat raises three assignments of error.
 {¶ 8} In his first assignment of error, Sabat argues that the trial court erred in granting summary judgment.
 {¶ 9} This court reviews the lower court's granting of summary judgment de novo. Druso v. Bank One of Columbus (1997),124 Ohio App.3d 125, 131, 705 N.E.2d 717; Brown v. Scioto Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.
 {¶ 10} The Ohio Supreme Court has established that summary judgment under Civ.R. 56 is proper when:
"(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made."
State ex rel. Parsons v. Fleming, 68 Ohio St.3d 509, 511, 1994-Ohio-172, 628 N.E.2d 1377; Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267. The party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. Celotex Corp. v.Catrett (1987), 477 U.S. 317, 330, 91 L.Ed.2d 265,106 S.Ct. 2548; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115,526 N.E.2d 798. Any doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138. There is no issue for trial, however, unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 249-250,91 L.Ed.2d 202, 106 S.Ct. 2505.
 {¶ 11} Sabat's complaint contained claims for personal injury, wrongful death, and loss of consortium. R.C. 2125.01, the statute governing wrongful death claims, requires that the death be caused by a wrongful act, neglect, or default of a defendant which would have entitled the decedent to maintain an action and recover damages had the death not ensued. The statute also provides that "no action for the wrongful death of a person may be maintained against the owner or lessee of the real property upon which the death occurred if the cause of the death was the violent unprovoked act of a party other than the owner, lessee, or a person under the control of the owner or lessee, unless the acts or omissions of the owner, lessee, or person under the control of the owner or lessee constitute gross negligence."
 {¶ 12} To maintain a wrongful death action on a theory of negligence, a plaintiff must demonstrate that:
"(1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death."
Littleton v. Good Samaritan Hosp. Health Ctr. (1988),39 Ohio St.3d 86, 92, 529 N.E.2d 449, 454. Likewise, to recover under a theory of negligence for a personal injury claim, a plaintiff is required to show duty, breach of that duty, and proximate causation between the breach and the injuries sustained.
 {¶ 13} The existence of a duty depends upon the foreseeability of harm. Jeffers v. Olexo (1989),43 Ohio St.3d 140, 142-143, 539 N.E.2d 614; Menifee v. Ohio Welding Products,Inc. (1984), 15 Ohio St.3d 75, 472 N.E.2d 707. Whether such a duty exists is a question of law for the court to decide on a case-by-case basis. See Hickman v. Warehouse Systems, Inc.
(1993), 86 Ohio App.3d 271, 273, 620 N.E.2d 949; Reitz v. MayCo. Dept. Stores (1990), 66 Ohio App.3d 188, 583 N.E.2d 1071.
 Genuine Issue of Material Fact: Did an Assault Occur? {¶ 14} In the case sub judice, AEM argues that it did not owe Bernice a duty of care in part because she was never assaulted on their property; instead, AEM claims that the evidence shows that Bernice "blacked out" and hit her head on the ground. In granting summary judgment, the trial court agreed, finding no evidence to establish that Bernice had been assaulted. However, we disagree because the evidence reveals a genuine issue of material fact on this point.
 {¶ 15} Sabat testified that he heard his wife return to the car, and he was preparing to exit the car to assist her when Mollica informed him his wife was lying on the ground. Mollica testified at deposition that Bernice looked as though she had been "roughed up" because her hair and clothes were in disarray. Mollica found Bernice an estimated ten to twenty feet away from the Sabat vehicle, and her glasses were found away from Bernice and the car. The shopping cart, however, was next to the car. Both Mollica and Myron Sabat averred that Bernice's purse was missing. Her purse was later found miles away with the purse straps torn off at one end.
 {¶ 16} Although the responding officer stated that Bernice told him that she had "blacked out" and had "blacked out" on prior occasions, both Mollica and Sabat claimed that she did not inform them that she had "blacked out." Four of Bernice's family members, including Sabat, averred that they were unaware of her history of losing consciousness and that Bernice had never complained to her doctor that she had previously "blacked out."[1] Moreover, AEM's own expert stated in his report that "one cannot rule out the probability that Mrs. Sabat was attacked by an unknown perpetrator causing her blackout and subsequent theft of her purse."
 {¶ 17} Although Bernice never remembered what happened to her in the parking lot, we find that there is substantial evidence that she was a victim of a purse snatching. She was found lying a distance from her car, her clothes and hair were in disarray and, as Mollica testified, it appeared as though she had been thrown where she lay. Her glasses were found ten to twenty feet away from her. Her purse was found miles away with the straps broken. These facts all indicate that foul play may have been involved. We find that, in viewing the evidence in the light most favorable to the plaintiff, there remains a genuine issue of material fact upon which reasonable minds may differ.
 {¶ 18} Therefore, assuming that an assault occurred, we must next consider whether AEM had a duty to protect Bernice from the criminal acts of a third person.
 AEM's Duty {¶ 19} "A business owner has a duty to warn or protect its business invitees from criminal acts of third parties when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner." Simpson v. Big Bear StoresCo., 73 Ohio St.3d 130, 1995-Ohio-203, 652 N.E.2d 702, at syllabus. To prevail, the business invitee must demonstrate the criminal act was foreseeable. Reitz, supra at 191-192; Howardv. Rogers (1969), 19 Ohio St.2d 42, 249 N.E.2d 804, paragraphs one and two of the syllabus. "The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." Menifee, supra at 77. We look to the totality of the circumstances to determine whether, absent special circumstances, the landowner conformed to a standard of ordinary care in providing security and to the owner's knowledge of criminal acts, keeping in mind that the circumstances must be "somewhat overwhelming." Walworth v. BP Oil Co. (1996),112 Ohio App.3d 340, 678 N.E.2d 959. The Ohio Supreme Court found that circumstances must be "somewhat overwhelming" because business owners are not absolute insurers of the safety of their business invitees and criminal acts are generally unpredictable.Reitz, supra at 194.[2]
 {¶ 20} After a thorough review of the record, we find that reasonable minds could come to but one conclusion based upon the evidence, and that is that the assault on Bernice was not foreseeable.
 {¶ 21} Sabat argues that because there was rampant crime at Garfield Mall and the surrounding area, and because AEM provided security at night and on the weekends, it knew or should have known that a daytime attack on an elderly woman would occur. To support his argument, Sabat provided the affidavit of a nearby store's security officer and the affidavit of his expert, James Clark ("Clark"). Clark made the following pertinent conclusions: (1) AEM's property had experienced a large number of crimes committed against the elderly; (2) Wednesday afternoons attract a large number of senior citizens to the mall area; (3) the presence of so many senior citizens in one location can be viewed as a crime generator; (4) the presence of security guards during the evening hours was an acknowledgment of a need to protect the site; (5) there were three similar parking lot crimes (dates not given); (6) other Cleveland area strip malls have daytime security; (7) AEM knew or should have been aware of the criminal activities; (8) many of the reported crimes in the area were against people, not property; (9) AEM was negligent in overlooking crimes and that negligence increased the risk of a purse theft; and (10) AEM failed to take reasonable measures to protect its business invitees. Clark concluded that there was overwhelming evidence that there was a substantial risk of a purse theft, and that such an act was reasonably foreseeable by AEM.
 {¶ 22} First, we note that Clark's affidavit does not include any of the specifics of past crimes. He fails to report the dates, times, or locations of previous incidents. On the other hand, AEM's expert, Lloyd Buck ("Buck"), gives a thorough statistical breakdown of the crime at Garfield Mall. Buck found there were a total of 89 incidents over a 38-month period, with the average age of the victims being 45. Buck found only one other incident similar to the assault on Bernice. Buck stated that because the majority of the incidents occurred on property not owned or controlled by AEM, AEM's security was proportionate to the needs of the mall. He concluded that the incident was "totally unforeseeable" and that "there was no way that AEM could have projected such an incident without the services of a crystal ball."
 {¶ 23} In determining whether the crime was foreseeable, we do not agree with AEM's argument that we should not consider the past crimes that have occurred in the area surrounding the mall. In Simpson, supra, the Ohio Supreme Court held that an owner has no duty to protect an invitee who is injured on property that is not within the owner's control. AEM claims that this means that this court should not consider, when applying the totality of the circumstances test, prior crimes that occurred on surrounding property. AEM misconstrues the holding in Simpson.
This court has consistently looked at the crime in the surrounding area under the totality of the circumstances test. See McDonald's, supra. Foreseeability must be viewed under the totality of the circumstances, rather than focused on particular criminal occurrences. See Reitz, supra.
 {¶ 24} Although we find that the scope of our review should consider prior crimes in the surrounding area of the mall, we find that the totality of the circumstances do not satisfy the "somewhat overwhelming" standard. After examining the record in its entirety, we find the only relevant evidence that could arguably show that this crime was foreseeable is that one similar purse snatching occurred in the same supermarket parking lot in 2000. We also note two other daytime violent crimes against the elderly — an assault of an elderly man with a rolled-up newspaper in 2000 and a purse snatching that occurred in 2001 at a nearby store. The other reported crimes occurred mostly inside stores, at night, at a nearby bar, and/or between people who knew each other.
 {¶ 25} We find as a matter of law that these crimes and the totality of the circumstances do not make this particular assault foreseeable. See Reitz, supra (theft and stabbing in parking lot not foreseeable when store not located in a high crime area, and only one prior similar incident occurred three years earlier); Barnes v. North Shore Car Wash (Dec. 3, 1998), Cuyahoga App. No. 73142 (murder at car wash not foreseeable even though the car wash was in a high crime area where previous crimes on and around the premises included vandalism, robberies, and thefts); Stone v. Shell Oil Co. (May 9, 1996), Cuyahoga App. No. 68807 (murder at gas station not foreseeable, even though gas station may have been in a high crime area, where previous criminal acts involved thefts but not violent assaults of a similar nature); Krause v. Spartan Stores, Inc.,158 Ohio App.3d 304, 2004-Ohio-4365, 815 N.E.2d 696 (assault in parking lot not foreseeable when only one similar assault occurred three years prior); but, see, McDonald's, supra (abduction and rape foreseeable when several hundred crimes reported in area and two violent crimes two and three years prior, and where store manager warned employees not to go alone behind the restaurant).
 {¶ 26} Therefore, we find that the lack of foreseeability negates both the existence of an underlying duty and the element of proximate cause necessary to establish a prima facie case of negligence. See Collins v. Down River Specialties (1998),128 Ohio App.3d 365, 369, 715 N.E.2d 189.
 Restatement of the Law {¶ 27} Sabat next argues that AEM was subject to liability under Section 323 of 2 Restatement of the Law 2d, Torts (1965), which provides:
"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm, or
(b) the harm is suffered because of the other's reliance upon the undertaking."
 {¶ 28} Sabat argues that because AEM undertook to provide security at Garfield Mall and because it did not consider the large number of elderly people shopping at the mall on weekdays, AEM's negligence increased the risk of a purse theft at the Garfield Mall. To support this claim, Sabat again cites Clark's affidavit, in which he avers that the lack of security in the parking lot on week-day afternoons increased the risk of a purse theft. We find it unnecessary, however, to weigh Clark's conclusion because AEM cannot be held liable when it had not yet undertaken to provide security services at the time of Bernice's alleged assault.
 {¶ 29} Although AEM undertook the responsibility for providing security services in the mall parking lot, it does not follow that AEM was negligent for failing to provide round-the-clock security. Had AEM undertaken the responsibility of providing security on weekdays, and performed negligently, our analysis would be different.
 {¶ 30} We find the cases Sabat cites in support of his argument to be easily distinguishable, because the trial courts in those cases either did not rely on Section 323 to determine liability or the defendants in those cases were presently providing security when the crimes occurred. In both King v.Lindsay (1993), 87 Ohio App.3d 383, 622 N.E.2d 396, and Pamerv. Pritchard Bros. (1990), 61 Ohio Misc.2d 150, 575 N.E.2d 900, security was present at the time the crime occurred, but a question of fact remained whether the security teams negligently performed their duties. In the instant case, there is no evidence that AEM was providing, or had ever provided, week-day security. Absent evidence of this type, it is axiomatic that AEM could not have acted negligently because it never assumed the duty to provide daytime security on weekdays. Therefore, it cannot be held liable pursuant to Section 323.
 Gross Negligence {¶ 31} Under the wrongful death statute, the court must find that the landowner committed gross negligence before holding the owner liable for the violent acts of a third party. Gross negligence is defined as the "failure to exercise any or very slight care" or "a failure to exercise even that care which a careless person would use." Posen v. Sitecon, L.L.C., Cuyahoga App. No. 86239, 2006-Ohio-3167, citing, Thompson Electric, Inc.v. Bank One, Akron, N.A. (1988), 37 Ohio St.3d 259, 265,525 N.E.2d 761. Based on the foregoing analysis, we find that AEM's decision not to provide daytime security does not amount to gross negligence.
 Loss of Consortium {¶ 32} Finally, we find that Sabat's claim for loss of consortium fails as a matter of law because it is dependent on his other claims. It follows that because his claim for wrongful death and personal injury fail, so does his claim for loss of consortium. See Bowen v. Kil-Kare, Inc. (1992),63 Ohio St.3d 84, 585 N.E.2d 384.
 {¶ 33} The first assignment of error is overruled.
 Motion for Continuance {¶ 34} In the second assignment of error, Sabat argues that the trial court erred when it failed to rule on his motion for a continuance pursuant to Civ.R. 56(F). In the third assignment of error, Sabat argues that the trial court abused its discretion in granting summary judgment when his Civ.R. 56(F) affidavit demonstrated that AEM was concealing and failed to produce documents relevant to the issues raised in the motion for summary judgment. We will consider these two assignments of error together.
 {¶ 35} Civ.R. 56(F) provides that a court may order a continuance to allow discovery when the opposing party has submitted affidavits indicating that they cannot, for stated and sufficient reasons, present by affidavit the necessary facts to justify their position. A court's ruling on a motion for a continuance will not be overturned absent an abuse of discretion.Carrier v. Weisheimer Cos. (Feb. 22, 1996), Franklin App. No. 95APE04-488.
 {¶ 36} The court's discretion in granting continuances pursuant to Civ.R. 56(F) should be exercised liberally in favor of the nonmoving party who has requested a reasonable interval for the production of necessary rebuttal material. Id., citingWhiteleather v. Yosowitz (1983), 10 Ohio App.3d 272,461 N.E.2d 1331.
 {¶ 37} The party seeking a continuance pursuant to Civ.R. 56(F) must submit affidavits which contain sufficient reasons why facts essential to opposition of the summary judgment motion cannot be presented by affidavit. Id. Mere allegations are not sufficient reasons; a factual basis must be stated and reasons given why it cannot present facts essential to opposing the summary judgment motion. Id., citing, Ramsey v. Edgepark, Inc.
(1990), 66 Ohio App.3d 99, 583 N.E.2d 443. In addition, the party seeking the continuance bears the burden of demonstrating that it is warranted. Glimcher v. Reinhorn (1991), 68 Ohio App.3d 131,587 N.E.2d 462.
 {¶ 38} Although Sabat asserts the trial court erred in failing to consider his affidavit, we find no evidence that the court failed to consider the motion. When a trial court fails to rule on a pretrial motion, it may ordinarily be presumed that the court overruled it. State ex rel. Cassels v. Dayton City SchoolDist. Bd. of Edn. (1994), 69 Ohio St.3d 217, 223,631 N.E.2d 150, 155; Newman v. Al Castrucci Ford Sales (1988),54 Ohio App.3d 166, 561 N.E.2d 1001.
 {¶ 39} Sabat was seeking a Rule 56(F) continuance so he could obtain the depositions of security consultant Craig Michalski, the former Garfield Mall manager, and the responding police officer. Sabat's affidavit also stated that he had not received five of Michalski's security audits. We note that Sabat obtained the requested depositions and affidavits. Therefore, the only issue remaining is Sabat's contention that he never received the security audits. Sabat claims the audits are crucial to establish the forseeability of the purse theft because they would show that AEM knew about the crime occurring on and around its property.
 {¶ 40} AEM claims that it is not in possession of the security audits and that there is no evidence that it destroyed or withheld the audits. We agree.
 {¶ 41} Michalski testified at deposition that he could estimate that he performed five audits from 1998 through 2003. However, he also testified that he was only assuming that he performed the audits and that, if he had done them, he would have turned over the security audits to AEM.
 {¶ 42} Michalski testified that his audits would not show whether there was a change in incidents of crime on the property because his audits were merely physical visits to the property. Any other information contained in the audits would be information that was given to or could be obtained by Sabat such as police reports, incident reports. As Michalski testified, he would obtain police reports and incident printouts to inform AEM about the crimes occurring on its property. These reports, or printouts, would then assist Michalski in determining the specific security needs for a given location. The audits contained little that was not already public information.
 {¶ 43} Michalski was not under contract to perform security audits after 2001. He stated that he presumed he conducted them in 2002 and 2003, but was not completely sure that he actually performed the audits. Moreover, a record of the hours he billed to AEM during those years indicates that he spent minimal time at the property and, as Michalski stated, not enough time to conduct an audit. Furthermore, Michalski testified that he "didn't really have any concerns about the security at the Garfield Mall."
 {¶ 44} Based on Michalski's testimony, we find no hard evidence that the alleged audits even existed. Moreover, the record contains the incident printouts and police reports for the relevant time period. We find that those incidents, even if AEMwas aware of them, did not make the alleged purse snatching and assault on Bernice foreseeable. Moreover, Sabat is unable to provide sufficient evidence that AEM improperly concealed any evidence.
 {¶ 45} Therefore, we find no abuse of the trial court's discretion and overrule the second and third assignments of error.
 {¶ 46} Accordingly, judgment is affirmed.
It is ordered that appellees recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and McMonagle, J., Concur.
[1] Although AEM claims that Bernice's medical records show a history of syncope — a temporary loss of consciousness — the medical records are not part of the record on appeal and thus will not be considered.
[2] Although Sabat urges this court to ignore the "somewhat overwhelming" requirement found in Reitz, supra, we have repeatedly applied the requirement in this district. This requirement was also applied in the case on which Sabat relies most heavily. See Allison v. McDonald's Restaurants (Nov. 4, 1993), Cuyahoga App. No. 63170.