[Cite as *M.B. v. Spence*, 2014-Ohio-1280.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| M. B., a minor, et al. | : | |
| | : | Appellate Case No. 25760 |
| Appellants/Cross-Appellees | : | |
| | : | Trial Court Case No. 2011-CV-4745 |
| v. | : | |
| | : | |
| THERON SPENCE, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Appellees/Cross-Appellants | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 28th day of March, 2014.

. . . . . . . . . . .

RICHARD A.F. LIPOWICZ, Atty. Reg. #0018241, 130 West Second Street, Suite 1900, Dayton, Ohio 45402

      Attorney for Appellants/Cross-Appellees, M.B., A.J., and E.J.

NICHOLAS E. SUBASHI, Atty. Reg. #0033953, and ANNE P. KEETON, Atty. Reg. #0076811, The Greene Town Center, 50 Chestnut Street, Suite 230, Dayton, Ohio 45440

      Attorneys for Appellees/Cross-Appellants, Theron Spence and Marian Doukoure

ROBERT BYRNE, Atty. Reg. #0040299, 150 East Gay Street, 21st Floor, Columbus, Ohio 43215

      Attorney for Appellee, Ohio Department of Job & Family Services

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}     Plaintiffs-appellants M.B., A.J., and E.J. appeal from a summary judgment rendered in favor of defendants-appellees Theron Spence and Marian Doukoure.

{¶ 2}     The plaintiffs contend that the trial court erred in granting Doukoure's motion to strike portions of the affidavit of the plaintiffs' expert and in finding that the defendants' actions were not a proximate cause of M.B.'s injuries.   The defendants contend in their cross-appeal that the trial court erred in finding that a special relationship existed between M.B. and defendants.

{¶ 3}     We conclude that the trial court did not err in rendering summary judgment in favor of Doukoure and Spence, because it was not reasonably foreseeable that M.B. would be injured on her walk home from school.   Accordingly, the judgment of the trial court is Affirmed.  We find it unnecessary to reach the issue raised in the cross-appeal.


### I. M.B. Is Suspended from School and Is Raped on her Walk Home

{¶ 4}     On September 17, 2010, M.B. was a fifteen-year-old freshman at Belmont High School.   At that time, she lived with her grandmother, E.J., at a location about four miles from Belmont High School.   E.J. drove M.B. to school on the 17th.   It was typical for E.J. to drive her granddaughter to school in the morning and pick her up in the afternoon.   On that particular day, E.J. also picked up M.B.'s friend, V.   E.J. dropped off M.B. and V. at the end of an alley between Watervliet Avenue and the entrance of the high school on Mapleview Avenue.

{¶ 5}     After M.B. was dropped off, she and V. met D., a classmate, and several of his friends.   D. and his friends were smoking a marijuana blunt and passing it around.   M.B. said that she did not take a hit from the blunt, but V. stated that M.B. did take a hit.   After a short

time, M.B., V., and D. left the alley and went into the main entrance of Belmont High School. After the students passed through the metal detector, School Resource Officer Blaney pulled them aside, because the three students smelled like marijuana. Officer Blaney escorted them to the office of the school nurse, Marian Doukoure.

{¶ 6} Doukoure made a physical assessment of each of the three students to determine whether they were under the influence of marijuana. Doukoure found that M.B. had "fine motor skills tremors" and her pupils were dilated and not responsive to light from a flashlight. Doukoure also checked M.B.'s pulse and found it elevated above a normal pulse rate.

{¶ 7} Doukoure determined that M.B. "showed physical symptoms of being under the influence." M.B. later conceded that during the assessment she felt dizzy, light-headed, and had a major headache. After the assessment by the nurse, a school resource officer took the three students to the office of Assistant Principal Theron Spence, who suspended the three students for violating the Belmont High School Code of Student Conduct.

{¶ 8} Spence told M.B. to contact someone to come pick her up from school. M.B. tried to contact her grandmother, E.J., several times without success. E.J. was M.B.'s legal custodian, and was listed on M.B.'s Registration and Emergency Medical Authorization forms. M.B. told Spence that she could not reach her grandmother; Spence told her to call someone else. M.B. then called her mother, A.J.

{¶ 9} M.B. reached her mother on the phone. Both Spence and M.B. spoke with A.J. during this phone call. Spence told A.J. that M.B. could ride the RTA bus home alone and that he could give her a bus token. According to M.B., she told Spence it was not safe to ride the bus home and that she was afraid to do so. According to A.J., she made it clear to Spence that she

did not want M.B. to leave the school until A.J. arrived. A.J. told Spence that it would take her a while to get to the high school because she would have to take the RTA bus there. According to A.J., Spence gave her assurances that he would keep M.B. at the high school until A.J. arrived.

{¶ 10} After Spence and M.B. completed their telephone call with A.J., M.B. was allowed to walk to some of her classes to get homework to complete during her suspension. According to M.B., she then returned to the main office and told Spence that she was going to leave the school and walk home. At that time, Doukoure was speaking to Spence. Neither Spence nor Doukoure made any effort to stop M.B. from leaving the school.

{¶ 11} On her walk home from the high school, M.B. called and texted several individuals on her cellphone, but not her mother or grandmother. When M.B. reached Boltin Street, approximately two miles from the high school, she was abducted and raped by a man named Billy Balidbid.

## II. Procedural History

{¶ 12} The plaintiffs brought this action against Spence and Doukoure, alleging that they were negligent and reckless when they allowed M.B. to walk home from Belmont High School while under the influence of marijuana, after being suspended from school. Doukoure and Spence moved for summary judgment. The plaintiffs filed memoranda in opposition to the motions for summary judgment. Attached to the plaintiffs' memorandum in opposition to Doukoure's motion for summary judgment was the affidavit of Dr. Gale T. Mabry, an expert witness. Doukoure moved to strike the affidavit of Dr. Mabry.

{¶ 13} The trial court sustained Doukoure's motion to strike Dr. Mabry's affidavit in

part, and overruled it in part. The trial court granted Doukoure's and Spence's motions for summary judgment. The plaintiffs appeal from the summary judgment rendered against them on their complaint.

{¶ 14} Spence and Doukoure have cross-appealed.

### III. The Trial Court Did Not Err in Rendering Summary Judgment
### in Favor of Doukoure and Spence, Because It Was Not Reasonably
### Foreseeable that M.B. Would Be Injured on the Walk Home from School

{¶ 15} Plaintiffs' Second Assignment of Error states:

THE TRIAL COURT ERRED IN SUSTAINING THE MOTIONS FOR SUMMARY JUDGMENT OF SPENCE AND DOUKOURE.

{¶ 16} When reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review. *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools Bd. Of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980). Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶ 17} An action based upon the negligence of another requires proof of four elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; (3)

injury; and (4) causation of the plaintiff's injury by the defendant's breach of duty. *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984) (Citations omitted). Generally, "a defendant's duty to a plaintiff depends on the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position." *Wheeler v. Ohio State Univ.*, 10th Dist. Franklin No. 11AP-289, 2011-Ohio-6295, ¶ 14, citing *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 645, 597 N.E.2d 504 (1992).

{¶ 18} In its summary judgment decision, the trial court found that a special relationship existed between M.B. and both Doukoure and Spence. However, the trial court then found that plaintiffs could not prove that any special duty arose in this case for Doukoure and Spence to protect M.B. from the criminal act of a third party. The court stated, in part:

> Plaintiffs argued that, because of the special relationship between [defendants] and [M.B.], [defendants] had a special duty to anticipate or foresee criminal activity. As stated previously, an injury is foreseeable if a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. There are factual allegations in this case demonstrating that [defendants were] aware of [M.B.'s] general condition as a minor who was showing physical signs of being under the influence of marijuana when [M.B.] was permitted to leave school and walk home alone. However, [M.B.] was also competent enough to independently call [her mother] from her personal cell phone; to collect her school assignments; to request to walk and meet her mother; and to leave the school premises without the need for assistance. Under these circumstances, there is no evidence that [M.B.] was

unaware of what she was doing or was incapable of independently leaving the premises to meet her mother. There is also no evidence that [M.B.] was unable to walk without problem, was unable to speak clearly, lacked fine motor skills, or otherwise displayed signs of being impaired, rendering her unable to walk home. Moreover, students walk home from school every day, and there is no evidence that any student walking home from Belmont High School had previously walked home with incident similar to that which arose here. Despite the school's policies, and considering the totality of the circumstances, there simply is no evidence that [M.B.'s] injury was foreseeable, as a reasonably prudent person would not have anticipated that [M.B.'s] third-party rape injury was likely to result from permitting [M.B.] to walk home alone at that time of day and in her apparently capable condition. Thus, although the court found a special relationship existed between [defendant] and [M.B.] at the time of [M.B.'s] injury, the court fails to find that a reasonably prudent person would have foreseen or reasonably anticipated the criminal acts of a third-party resulting in [M.B.'s] injury, and, consequently, [defendants] owed no special duty to [M.B.] to protect her from the criminal acts of a third-party under these particular circumstances. Dkt. 151, p. 19; Dkt. 149, p. 11-12.

{¶ 19} The trial court went on to find that even if Doukoure and Spence had owed a special duty to M.B. to protect her from the criminal acts of a third party, the plaintiffs had failed, as a matter of law, to establish the proximate-cause prong of their negligence claim, due to the unforeseeability of the criminal attack on M.B.. Dkt. 151, p. 20-21; Dkt. 149, p. 12-13.

**{¶ 20}** The plaintiffs contend that the trial court erred in finding that M.B.'s injuries were not foreseeable to a reasonably prudent person. The plaintiffs contend that reasonably prudent persons in the positions of Doukoure and Spence would have foreseen that a minor who was under the influence of marijuana would be injured on a four-mile walk home alone through a dangerous, crime-ridden area. Doukoure and Spence disagree, contending that, as a matter of law, the attack on M.B. was not foreseeable under the specific facts of this case.

**{¶ 21}** We begin our analysis of the trial court's decision by reviewing a few principles of law that have developed regarding foreseeability, a school's duty to protect its students, and criminal acts of third parties. First, the test of foreseeability is whether "a reasonably prudent person would have anticipated that an injury would result from the performance or nonperformance of an act." *Menifee,* 15 Ohio St.3d at 77 (Citations omitted).

**{¶ 22}** Second, "'danger in some form and the possibility of injury in some manner is always present when children walk home from school. This alone, however, does not charge a public school teacher with the responsibility to foresee the unforeseeable, and thus to become [an] insurer of a child's safe passage home.'" *Guhn v. Board of Education, Clyde-Green Springs School District*, 6th Dist. Sandusky No. S-86-23, 1987 WL 6188, *3 (Feb. 6, 1987), quoting *Person v. Gum*, 7 Ohio App.3d 307, 310, 455 N.E.2d 713 (8th Dist.1983).

**{¶ 23}** Third, "criminal behavior of third persons is not predictable to any particular degree of certainty. It would be unreasonable, therefore, to hold a party liable for acts that are for the most part unforeseeable. Thus, the totality of the circumstances must be somewhat overwhelming before a [defendant] will be held to be on notice of and therefore under the duty to protect against the criminal acts of others." *Reitz v. May Company Department Stores*, 66 Ohio

App.3d 188, 193-194, 583 N.E.2d 1071 (8th Dist.1990).   Although the facts in *Reitz* involved a business, not a school, we conclude that the totality-of-the-circumstances approach used in that case provides useful guidance in addressing the record before us.

{¶ 24}   Additional guidance regarding the foreseeability of criminal acts by third parties is provided in the Restatement.   Generally, "[a]n act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal."   2 Restatement of the Law 2d, Torts, Section 302(B) (1965).   However, Section 448 of the Restatement provides:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

{¶ 25}   Furthermore, comment b. to section 448 of the Restatement provides:

> There are certain situations which are commonly recognized as affording temptations to which a recognizable percentage of humanity is likely to yield.   So too, there are situations which create temptations to which no considerable percentage of ordinary mankind is likely to yield but which, if they are created at a place where persons of peculiarly vicious type are likely to be, should be

recognized as likely to lead to the commission of fairly definite types of crime. If the situation which the actor should realize that his negligent conduct might create is of either of these two sorts, an intentionally criminal or tortious act of the third person is not a superseding cause which relieves the actor from liability.

{¶ 26} Both section 302B and section 448 of the Restatement focus on the knowledge of a defendant, or a reasonably prudent person in the defendant's position, regarding the likelihood that a subsequent criminal act by a third party will occur. According to the plaintiffs, both Doukoure and Spence should have known that Belmont High School and the surrounding area was one of the most dangerous crime-filled parts of the City of Dayton. Therefore, it was reasonably foreseeable that a minor under the influence of marijuana who walked home alone through those dangerous neighborhoods would be injured.

{¶ 27} In support of their contention that the defendants should have known that M.B.'s walk home would likely subject her to harm, the plaintiffs cite to a newspaper article and to testimony of Spence. The newspaper article to which the plaintiffs refer does not appear to be a part of our record. Counsel for plaintiffs referred, generally, to the newspaper article during Spence's deposition. Apparently, the newspaper article discusses the fact that Belmont High School, itself, is one of the more dangerous schools in the area, without, however, indicating whether areas near the high school are dangerous or especially crime-ridden.

{¶ 28} Spence also testified about the cooperation between Belmont High School and the local police department to increase safety for the students at Belmont High School. The goal of increasing safety for its students is one that all schools should seek to achieve, but does not thereby establish that a certain danger is more or less likely in surrounding neighborhoods. In

short, the fact that Belmont High School was trying to increase the safety of its students does not necessarily imply that the neighborhoods around Belmont High School were especially dangerous or that Doukoure and Spence were aware of any special danger.

{¶ 29} Because of the unpredictable and unlawful nature of intentional criminal acts of third persons, those actions are generally viewed as not reasonably foreseeable. But this general rule can be overcome by particular facts that make the criminal acts more foreseeable. For example, evidence of prior violent criminal acts in the vicinity of the school, or past injuries to students walking home from Belmont High School, would help support the presence of a genuine issue of material fact regarding foreseeability. *Federal Steel & Wire Corp. v. Ruhlin Construction Co.*, 45 Ohio St.3d 171, 177, 543 N.E.2d 769 (1989) (reversing a directed verdict where there was prior evidence of vandalism). On the other hand, the lack of evidence of this kind would support the absence of a genuine issue of material fact regarding foreseeability. *See*, *e.g.*, *Hickman v. Warehouse Beer Systems, Inc.*, 86 Ohio App.3d 271, 278, 620 N.E.2d 949 (2d Dist.1993) (finding that shooting of visitor was insufficiently foreseeable where there had been two prior burglaries and one vandalism incident, but no prior armed robbery or other crime involving personal violence); *Evans v. Ohio State Univ.*, 112 Ohio App.3d 724, 742-743, 680 N.E.2d 161 (10th Dist.1996) (finding that the molestation of a victim by a 4-H goat judge was not reasonably foreseeable due in part to the lack of prior similar incidents)*; Wheeler v. Board of Educ., Finneytown Local School District*, 1st Dist. Hamilton No. C-850511, 1986 WL 6814, *4 (June 18, 1986) (finding an attack was not reasonably foreseeable where there was no knowledge of prior fights or any reputation for violence or troublemaking).

{¶ 30} Furthermore, the Tenth District Court of Appeals has found that a prior, general

history of crime in the area of a school may be insufficient, by itself, to preclude summary judgment on the issue of foreseeability. In *Shivers v. University of Cincinnati*, 10th Dist. Franklin No. 06AP-209, 2006-Ohio-5518, the court stated that the rape of a student was, as a matter of law, not reasonably foreseeable, despite the evidence of prior assaults and criminal activity in the area. The court held, at ¶ 9:

> Three main factors contribute to a court's finding the evidence insufficient to demonstrate the foreseeability of a crime as a matter of law: (1) spatial separation between previous crimes and the crime at issue; (2) difference in degree and form between previous crimes and the crime at issue; and (3) lack of evidence revealing defendant's actual knowledge of violence.

{¶ 31} In addition to the case law regarding foreseeability of harm caused by criminal acts of third parties, we also note the case of *Person v. Gum*, 7 Ohio App.3d 307, 455 N.E.2d 713 (8th Dist.1983), which involved a minor who was injured on his walk home from school. In *Gum*, a seven-year-old student was allowed to walk home alone at lunch. On his way home, "he was chased by a Doberman pinscher. In attempting to elude the dog, he ran into the street where he was hit by a car." *Id.* at 308. The student's mother sued his teacher, the principal of the elementary school, and members of the Board of Education. The jury returned a verdict in favor of the plaintiff. The trial court overruled the defendants' motion for a directed verdict. *Id.* at 309.

{¶ 32} On appeal, the 8th District Court of Appeals held that the trial court erred in overruling the defendants' motion for a directed verdict:

> There is no dispute that [the student] came to be injured while he was

walking home from school and was hit by a car after he ran into the street to avoid a dog chasing him. We think that the intervention of the dog and the car could not reasonably have been foreseen by [the teacher]. Further, [the teacher]'s conduct in permitting [the student] to leave school was not an "important link in the chain of causation," nor was it a "substantial factor" in bringing about [the student]'s harm. *Id.* at 310, quoting 2 Restatement of the Law 2d, Torts, Section 431 (1965).

{¶ 33} Arguably, given the respective ages of the victims, the harm that occurred in *Gum* was more foreseeable than the harm that M.B. suffered in the case before us. Moreover, the case law regarding foreseeability of harm in cases involving criminal acts by third parties indicates that the plaintiffs had to overcome a high burden to establish that it was reasonably foreseeable that M.B. would be harmed on her way home from school. The type of facts that have assisted plaintiffs in other cases in overcoming this high burden are not present in this case. The record before us is devoid of sufficient evidence, as a matter of law, to create a genuine issue of material fact regarding the foreseeability that M.B. would be harmed on her walk home from school. Therefore, the trial court did not err in granting summary judgment in favor of Doukoure and Spence.

{¶ 34} The plaintiffs' Second Assignment of Error is overruled.

### IV. The Remaining Assignments of Error Are Rendered Moot by our Disposition of the Plaintiffs' Second Assignment of Error

{¶ 35} Plaintiffs' First Assignment of Error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN THE COURT

STRUCK PARTS OF THE AFFIDAVIT OF DR. GALE T. MABRY

{¶ 36}  Because the affidavit of Dr. Mabry only addressed the issue of professional negligence, not proximate cause, this assignment of error is rendered moot by our disposition of the Second Assignment of Error.  Therefore, this assignment of error is overruled.  App.R. 12(A)(1)(c).

{¶ 37}  Doukoure and Spence filed a cross-appeal in which they identified the following assignment of error:

THE TRIAL COURT ERRED IN FINDING THAT A SPECIAL

RELATIONSHIP EXISTS BETWEEN "A SCHOOL OFFICIAL OR

AUTHORITY" AND A STUDENT.

{¶ 38}  Doukoure and Spence contend that we should uphold the trial court's grant of summary judgment in their favor, "but should modify the trial court's Decisions by reversing the finding that a special relationship exists for duty to protect purposes."  Brief, p. 38.  Based on our disposition of the plaintiffs' Second Assignment of Error, however, we conclude that this assignment of error is moot.  Because the trial court rendered judgment in favor of Doukoure and Spence, which judgment we are affirming, they have not been prejudiced by any error in the trial court's reasoning.   Therefore, this assignment of error is overruled as moot.

## V. Conclusion

{¶ 39}  All of the assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.


Copies mailed to:

Richard A.F. Lipowicz
Nicholas E. Subashi
Anne P. Keeton
Robert Byrne
Hon. Mary K. Huffman